(September 3, 1992)

■ Linda Andre, Respondent, v Mecta Corp., Appellant, et al., Defendants.—Order, Supreme Court, New York County (Stanley L. Sklar, J.), entered May 10, 1991, denying the motion by defendant Mecta Corp. ("Mecta") for summary judgment dismissing plaintiff's three causes of action against it, unanimously reversed, on the law, the motion is granted, and the balance of the action severed, without costs. The Clerk is directed to enter judgment in favor of defendant Mecta Corp., dismissing and severing the complaint as against it.

Plaintiff, a former mental patient at the Payne Whitney Clinic of defendant New York Hospital, has brought this action for medical malpractice against the Hospital and two of its resident physicians, arising from an allegedly excessive and improper electroconvulsive therapy (ECT) course of treatment resulting in permanent memory loss and other brain impairment. Joined as an additional party defendant is Mecta, the manufacturer of the ECT machine (Model-C) used in her treatment. There is no proof by plaintiff that the machine was in any way defective, either in its manufacture or design. In opposition to Mecta's motion for summary judgment dismissing plaintiff's causes of action against it for product liability, negligence and breach of warranty, plaintiff argued, and the motion court agreed, that a triable issue was raised as to the adequacy of the warnings issued by Mecta concerning the dangers involved in the machine's use. In this ensuing appeal by Mecta, we hold to the contrary and reverse.

By way of analogy, we note that a prescription drug manufacturer must keep itself abreast of information pertaining to its products, and must take reasonable steps to bring that knowledge to the attention of the medical profession *(Baker v*

1

*St. Agnes Hosp.,* 70 AD2d 400). It is also clear that when injury results from the use of a medicinal product, the adequacy of the warnings and the degree of availability to plaintiff's own physicians (rather than to the medical profession generally) may present a question for the trier of fact *(Lindsay v Ortho Pharm. Corp.,* 637 F2d 87 [applying New York law]). On the other hand, the adequacy of the warning may be so clear, or the existing knowledge of the relevant hazard by the user may be so apparent, that liability may be resolved in favor of the manufacturer as a matter of law *(Wolfgruber v Upjohn Co.,* 72 AD2d 59, *affd* 52 NY2d 768; *McDaniel v Williams,* 23 AD2d 729; *Parker v State of New York,* 201 Misc 416, *affd* 280 App Div 157). This is such a case.

We are confronted here not with a prescription drug, but a machine, the use of which in treatment was entirely under the control of defendant Hospital and its designated staff. A side effect of the treatment, persistent memory loss, was well known to the hospital staff and even appears as one of the "rare or uncommon side effects" in the printed consent form signed by the patient. But even if the machine partakes of some aspects of a drug with dangerous side effects, we stated in *Glucksman v Halsey Drug Co.* (160 AD2d 305, 307) that "[w]hether the content of the warning is adequate depends upon the physician involved. A warning need be given only where the situation calls for it. [Citation omitted.] A plaintiff must demonstrate that the warning was inadequate and that the failure to adequately warn of the dangers of the drug was a proximate cause of his or her injuries."

Plaintiff failed to meet this burden as a matter of law. It is undisputed that the Payne Whitney Clinic of defendant Hospital is an institution specializing in the treatment of acute psychiatric disorders. The uncontradicted depositions of the treating physicians establish that it is a teaching hospital with rigorous academic standards, and that continuing instruction is provided to residents upon the proper administration of ECT. In this context "the situation" did not "call for" any warning by Mecta as to side effects arising from ECT treatment.

Plaintiff's grievance giving rise to her viable cause of action for medical malpractice lies not with Mecta's ECT machine, but the manner of its employment by her physicians. It is their status as " 'responsible intermediar[ies]' " that insulates Mecta from liability to plaintiff and breaks the chain of proximate cause *(Billsborrow v Dow Chem.,* 177 AD2d 7, 15). Any deficiency in the warnings given her as to dangerous side

effects of the treatment is the responsibility of these physicians, and any resulting damages are cognizable under her fifth cause of action alleging in conventional terms the absence of her informed consent to the procedure.

We have examined plaintiff's remaining arguments and find them without merit. Concur—Murphy, P. J., Carro, Milonas, Wallach and Smith, JJ.