IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 3, 2009 Session

## EVELYN NYE, individually and as surviving spouse and next-of-kin of HUGH TODD NYE, v. BAYER CROPSCIENCE, INC., et al.

Direct Appeal from the Circuit Court for Hamilton County, Division IV
No. 06C760      Hon. W. Neil Thomas, III, Judge

———————————————

No. E2008-01596-COA-R3-CV - FILED OCTOBER 14, 2009

———————————————

Defendants sold materials containing asbestos to the deceased's employer, where he was exposed to asbestos and contracted mesothelioma from which he died. Plaintiff's widow brought this action against the supplier, a jury trial resulted and the jury returned a verdict for the defendant, which the Trial Court approved. On appeal, we hold that certain jury instructions were error and we reverse and remand for a new trial.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded for a new trial.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Jimmy F. Rodgers, Jr., Chattanooga, Tennessee, and John E. ("Rett") Guerry, III and Benjamin D. Cunningham, Mount Pleasant, South Carolina, for appellant, Evelyn Nye.

Hugh B. Bright, Jr., Michael J. King, and Robert L. Vance, Knoxville, Tennessee, for appellees, Bayer Cropscience, Inc., et al.

**OPINION**

The plaintiff/appellant is the surviving spouse of Hugh Todd Nye, and in the Complaint, it was alleged that Mr. Nye suffered from mesothelioma as a result of exposure to asbestos during his employment at the DuPont plant in Chattanooga, Tennessee. He worked at the

DuPont facility from September 1948 to his retirement in April 1985, and died as a result mesothelioma on August 1, 2006.   In the Original Complaint numerous defendants were served, including the defendant/appellee in this appeal, National Service Industries, Inc., d/b/a North Brothers. (North Brothers or defendant).

By the time the case was tried before a jury, North Brothers was the sole remaining defendant, and the only claims presented to the jury against North Brothers arose from North Brothers' alleged sales of asbestos containing products to DuPont.  These products were alleged to have been manufactured by Owens Corning Fiberglass, Pittsburgh Corning Corporation, Johns Manville and Raybestos.  All four of the manufacturers had filed for protection under Chapter 11 of the Bankruptcy Code and had established trusts to pay asbestos-related personal injury claims.

Procedurally, North Brothers filed a Motion for Summary Judgment asking the Trial Court to find that North Brothers could not be held liable for the sale of the products of the aforementioned manufacturers because the manufacturers were not insolvent and they were amenable to service of process. [1]   The Motion was denied, and plaintiff then filed a motion for summary judgment asking the Trial Court to find that the manufacturers were either insolvent or not amenable to service of process. The Trial Court held that because of the stays imposed by the Bankruptcy Courts the companies were not amenable to service of process in Tennessee and the plaintiff could proceed against North Brothers under a strict liability theory for the sale of the products of the manufacturers.

The parties agree that the only theories of liability brought to the jury and involved in this appeal involve strict liability, i.e., the sale of a defective product and strict liability for failure to warn.

The jury returned a verdict in favor of North Brothers and the Trial Judge approved the jury's verdict.

---

[1] Tenn. Code Ann. § 29-28-106 provides: (a) No "product liability action," as defined in § 29-28-102(6), shall be commenced or maintained against any seller when the product is acquired and sold by the seller in a sealed container and/or when the product is acquired and sold by the seller under circumstances in which the seller is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition. The provisions of the first sentence of this subsection shall not apply to:
(2) Actions where the manufacturer of the product or part in question shall not be subject to service of process in the state of Tennessee and where service cannot be secured by the long-arm statutes of Tennessee; or
(3) Actions where the manufacturer has been judicially declared insolvent.

The jury verdict form reflects that the jury found North Brothers to be at fault based on its sales after July 1, 1969 but that it found that DuPont was the sole cause of plaintiff's damages.

The evidence established that Nye was exposed to asbestos containing products while working for DuPont. His exposure was to various asbestos-containing products sold by North Brothers to DuPont. Nye's deposition was read to the jury, and he testified that he never saw any boxes or container that asbestos products came in, and never observed any warnings about any of the products. Moreover, there was no evidence to show that Nye was aware of the health hazards associated with exposure to asbestos. The evidence further revealed that he died from malignant mesothelioma, a single asbestos-related cancer, and that the disease which caused his death was associated with his exposure to asbestos at the DuPont plant.

There was also evidence presented at trial regarding when both North Brothers and DuPont became aware that exposure to asbestos could cause mesothelioma. The evidence showed that DuPont was on the cutting edge of asbestos safety, and DuPont representatives attended the seminal Asbestos Conference at the New York Academy of Science in 1964. As a result of the conference, DuPont instituted an asbestos monitoring and safety program in its various facilities, including the plant in Chattanooga. The evidence demonstrated that during the relevant time period DuPont was fully aware that asbestos caused diseases of the lung, but following the 1964 conference, DuPont continued to specify and purchase and employ asbestos containing products in its facilities, including the Chattanooga plant where Nye worked.

Evidence was also presented that North Brothers became aware that exposure to asbestos could cause mesothelioma sometime in the 1960s. North Brothers, however, did not provide written warnings to its customers, including DuPont, of this health hazard nor did North Brothers ever inquire of DuPont as to the extent of its knowledge regarding the hazards associated with asbestos containing products.

At the close of the evidence, plaintiff moved for a directed verdict on the applicability of North Brothers' sole cause defense to the sale of defective product claim, which the Trial Court denied. During the jury charge conference, plaintiff's counsel objected to and proposed various charges concerning North Brothers' sole cause defense, plaintiff's sale of a defective product claim, and the applicability of DuPont's knowledge of the hazards associated with asbestos to either of plaintiff's claims, the sale of defective product claim and the failure to warn claim.

The Trial Court gave the following instructions to the jury that are pertinent to this appeal:[2]

> 1. Fault has two parts in this case; sale of a defective product and legal cause. One who manufactures or sells a defective product is responsible to the

---

[2] The numbering before each charge was not so numbered, by the Trial Court, but added for convenience of our discussion of the charges.

3

ultimate consumer of the product for physical harm cause to the consumer or the consumer's property if: (1), The manufacturer or seller is engaged in the business of manufacturing or selling such a property; and, (2) It is expected to and does reach the user or consumer without substantial change in the condition in which it was manufactured or sold.

2. A property is defective if it is unsafe for normal or reasonably anticipated handling and use. . . . . A seller includes a retailer, wholesaler, or distributor. A seller is any individual or organization in the business of selling a product, either for resale or for use or consumption.

3. The seller or manufacturer of a product is not responsible for any injury to person or property caused by the product unless the product is determined to be in a defective condition at the time it left the seller's or manufacturer's control. In making this determination, you must apply the state of scientific and technological knowledge available to the seller or manufacturer at the time the product was placed on the market, rather than at the time of injury.

4. Where proper instructions for use and an adequate warning of hazards are given, the seller or manufacturer may reasonably assume that they will be read and followed. Thus, a product is not in a defective condition if: 1, The manufacturer or seller has given proper instructions for the use of a product and an adequate warning of the dangers associated with the use or misuse of the product; and 2, The product is safe for use if the instructions and warnings are read and followed.

5. A manufacturer or a seller cannot be held liable for failure to warn if you find that the consumer, DuPont, was already aware of the danger in connection with the use of asbestos-containing products, or if you find that adequate warnings were given by manufactures of sellers to DuPont.

6. The second part of fault is legal cause. A legal cause of any injury is a cause which, in natural and continuous sequence, produces an injury, and without which the injury would not have occurred. A single injury can't be caused by the negligent acts or omissions of one or more persons.

7. If you find that a person sold a defective product and that the sale was a legal cause of the injury or damages for which a claim was made, you have found that person to be at fault. . . . . If you find more than one person to be at fault, you must then determine the percentage of fault chargeable to each of them.

8. If you find that DuPont failed to provide a safe workplace for Hugh Todd Nye and that this failure was the sole cause of damage to him, then you have found

DuPont was the sole cause of his injury, and you may not consider the fault of North Brothers or any other company supplying asbestos-containing materials to DuPont.

9.      If you find that DuPont was not the sole cause of damage to Mr. Nye, then you may consider the fault of North Brothers and any other companies supplying asbestos-containing materials to DuPont.

The charges numbered 5 and 8 above were objected to by Plaintiff and extensive argument and discussion was held during the charge conference and while the jury deliberated.

During jury deliberation, the jury sent a note to the Court asking for clarification of the sole cause charge. The Court had difficulty understanding the question set forth in the note and, after much discussion and argument by counsel, the Court asked the jury to return to the court room to articulate their question.

Juror No. 1 spoke for the jury and first asked the Judge if any one of the charges was more important than the other charges. In response, the Judge reminded the jury that he had explained when he first delivered the charges that all of the instructions were equally important and that the order in which they were given had no significance. The following colloquy between the Trial Court and Juror No. 1 ensued:

Juror No. 1:    You may not be able to answer it this way, but if the product is defined as defective and . . . the last paragraph on Page 8 states that if it is defective, then the seller or manufacturer could be held responsible, but also - - you may have to read the paragraph for me, the first paragraph.[3]

* * *

The Court:    A manufacturer or sell cannot be held liable for failure to warn if you find that consumer, DuPont, was already aware of any danger in connection with the use of asbestos-containing products, or if you find that adequate warnings were given by the manufacturer or sellers to DuPont.

Juror No. 1:    I guess where we are troubled - - if you read this paragraph and then you read the other one, are they contradicting each other?

The Court:    They were not intended to be. If I could just give you some sort of simple explanation. You should remember that fault consists of a defective product and causation. I think on Pages 10 and 11 I'm

_____

[3] Apparently Juror No. 1 did not bring a copy of the jury charges into the court room. The record does not contain a written copy of the jury charges either.

speaking more in my instructions as to the issue of causation.

Juror No. 1:   Right.

The Court:   Does that help?

Juror No. 1:   Does anybody have any other questions? Your Honor, I guess where we are troubled at is as far as if we find that the product is defective, does that - -

The Court:   You can still find that it did not cause the injury to Mr. Nye.

Juror No. 1:   Well, if we find that the product was defective and because of it being defective and everyone knew about it being defective and it was manufactured and sold as a defective product, that's where we have trouble with this paragraph as far as the manufacturer or seller cannot be held liable for failure to warn if they find the consumer, DuPont, was already aware of the danger. So, you know, there's enough evidence that showed that DuPont knew of all the danger but so did everybody else.

I guess where we are kind of stuck at the point that we are stuck at is that I think we all feel the product was defective because of the danger of the product itself. So because of that and because of this paragraph here as far as the manufacturer and seller cannot be held liable for failure to warn, they kind of to us kind of contradicts each other. So if you could help us with that . Because we all feel that the product in itself was a defective product and we felt like there was enough evidence to show that fact, but we are hung up a little bit because does this paragraph - - does it exclude - - does it exclude the consumer DuPont or any of these other - - North Brothers or the people at North Brothers that was involved in it or does it - - being classified as a defective product and being all of us agree that it is a defective product and without me going through here there's also a paragraph in here that states a product is defective if it is unsafe for normal or reasonably anticipated handling and use. A manufacturer is a person or company that designs, fabricates, produces, compounds, processes or assembles any product or its component part. The word seller includes a retailer, wholesaler or distributor. A seller is an individual or organization in the business of selling a product, either for resale or for use of consumption.

The seller or manufacturer of a product is not responsible for any

6

injury to a person or property caused by that product unless the product is determined to be defective.

So that's were we are at. Reading those two paragraphs we have decided that the product is defective, but then reading the two paragraphs you read - - that we wanted to see if it supersedes these, can you help us with that ?

The Court: Later as you get to it you should then focus on Page 10 and 11 on the issue of causation. Did this defective product - - in the context of DuPont - - was DuPont the sole - - and that the reason I use that word sole - - cause of Mr. Nye's injury. If DuPont was not the sole cause of Mr. Nye's injury, then you toss DuPont out of the mix and consider the other sellers and manufacturers.

Juror No. 1: I understand that. We all agree because of it being defective that it was the cause of his illness, but again I think you have answered our question as far as the thing that we wanted to make sure was that one article or one paragraph didn't supersede the other.

The Court: Read them all together.

The jury returned to its deliberation and the Trial Court sent the following written response to Juror No. 1's questions:

Let me preface this note by reminding you to consider all of the charge [sic] and not single out some and ignore the others. Let me also say that all parts of the charge are equally important.

In determining whether DuPont was the sole cause of Mr. Nye's injury you should consider what Dupont knew compared with the knowledge of all others.

In determining whether there was a failure to warn you should consider what Dupont knew compared with the knowledge of all others.

Subsequently, the jury returned a verdict in favor of North Brothers. The part of the Jury Verdict Form at issue on appeal and the jury's response reads as follows:

We, the jury, unanimously answer the questions submitted by the Court as follows:

1. Do you find the defendant, North Brothers, to be at fault? (Based upon sales after July 1, 1969.) (The plaintiff has the burden of proof).
Yes ✓ No __

7

If your answer is "no" to this question, stop here, sign the verdict form and return to the Court. If you anser "yes" to this question, proceed to Question 2.

2.      Do you find DuPont was the sole cause of the plaintiff's damages? (The defendant has the burden of proof).

Yes ✓  No __

If your answer is "yes" to this question, stop here, sign the verdict form and return to the Court. If your answer is "no" to this question, proceed to Question 3.

The issues raised on appeal are:

a.      Did the Trial Court correctly determine that plaintiff's claim for strict liability could be maintained against North Brothers for the sale of asbestos containing products manufactured by Owens-Corning Fiberglass, Pittsburgh Corning, Johns Manville or Raybestos Manhattan because the manufacturers were not amenable for service?

B.      Whether the Trial Court erred in failing to instruct the jury that North Brothers could be found at fault for either: (1) strict liability - sale of defective product or (2) strict liability - failure to warn?

C.      Whether the Trial Court erred by charging the jury on North Brother's sole cause defense as it relates to plaintiff's sale of a defective product theory of liability?

D.      Did the Trial Court properly instruct the jury on sole cause?

E.      Whether the Trial Court erred when it charged the jury that "if you find that Dupont failed to provide a safe workplace for Mr. Nye and that this failure was the sole cause of damage to him, then you have found DuPont was the sole cause of his injury, and you may not consider the fault of North Brothers or any other company supplying asbestos-containing materials to DuPont' ?

F.      Whether the Trial Court erred when it charged the jury that "a manufacturer or a seller cannot be held liable for failure to warn if you find that the consumer, DuPont, was already aware of any danger in connection with the use of asbestos-containing products, or if you find that adequate warnings were given by manufactures or sellers to DuPont?

G.      Whether the Trial Court erred by creating and issuing a jury form that failed

8

to allow the jury to differentiate between the plaintiff's two strict liability theories?

H.      Whether the Trial Court erred by denying plaintiff's motion for directed verdict based on North Brother's failure to produce any evidence, regarding plaintiff's sale of a defective product claim?

The Trial Court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005), *Union Carbide Corp. v. Huddleston* 854 S.W.2d 87, 91 (Tenn. 1993). The determination of whether jury instructions are proper is a question of law that this court reviews *de novo* with no presumption of correctness. *Goodman v. Jones* No. E2006-02678-COA-R3-CV, 2009 WL 103504 at * 5 (Tenn. Ct. App. Jan. 12, 2009)(citing *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S. W. 2d 935, 940 (Tenn. Ct. App.1989).

Plaintiff/appellant raises the issue of whether the Trial Court was in error when it denied its motion for a directed verdict. The Supreme Court discussed an appellate court's standard of review applicable to a motion for a directed verdict in *Johnson v. Tennessee Farmers Mut. Ins. Co.*205 S. W. 3d 365 (Tenn.2006) stating:

> In reviewing the trial court's decision to deny a motion for a directed verdict, an appellate court must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn.2003). A motion for a directed verdict should not be granted unless reasonable minds could reach only one conclusion from the evidence. *Id.* The standard of review applicable to a motion for a directed verdict does not permit an appellate court to weigh the evidence. *Cecil v. Hardin*, 575 S.W .2d 268, 270 (Tenn.1978). Moreover, in reviewing the trial court's denial of a motion for a directed verdict, an appellate court must not evaluate the credibility of witnesses. *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638-39 (Tenn.Ct.App.1993). Accordingly, if material evidence is in dispute or doubt exists as to the conclusions to be drawn from that evidence, the motion must be denied. *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn.Ct.App.1995).

*Johnson v. Tennessee Farmers Mut. Ins. Co.* at 370.

There was no dispute that under the definitions provided by the Tennessee Products Liability Act (TPLA or Act), North Brothers was not the manufacturer of the asbestos containing products it sold to DuPont. The Act defines manufacturer as "the designer, fabricator, producer, compounder, processor or assembler of any product or its component parts. Tenn. Code Ann. § 29-28-102(4). There also is no dispute that the manufacturers of the various asbestos containing products sold to DuPont by North Brothers were manufactured by either Owens-Corning Fiberglass, Pittsburgh

Corning, Johns Manville or Raybestos. The fact that North Brothers sold these manufacturers asbestos containing products to DuPont and qualifies as a "seller" under the TPLA is also not in dispute.

The Act defines a seller as a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption. Tenn. Code Ann. § 29-28-102 (7).

North Brothers contended during the pre-trial proceedings and contends now that Mrs. Nye could not maintain a cause of action against it because of its status as a "seller". Tenn. Code Ann. §29-28-106(b) prohibits a plaintiff from pursuing a strict liability claim against a non-manufacturer seller of products unless one of these three conditions is present: (1) the manufacturer is not subject to service of process in the State of Tennessee; (2) service cannot be had by the long-arm statutes of Tennessee; or (3) the manufacturer has been judicially declared insolvent. Thus, as explained by the Supreme Court, when the manufacturer is not amenable to service of process or is insolvent, an injured consumer can assert liability against the "faultless" seller. *Owens v. Truckstops of America*, 915 S. W. 2d 420, 432 (Tenn.,1996). The *Owens* Court stated that the primary purpose of section 106(b) of the TPLA is "to ensure that an injured consumer may maintain a strict liability action against whomever is most likely to compensate him for his injuries." *Owens* at 432 (citing *Seals v. Sears, Roebuck and Co., Inc.,* 688 F. Supp. 1252, 1253 (E .D. Tenn.1988)).

North Brothers argued that the four manufacturers at issue were amenable to service of process in Tennessee and that none of them had been judicially declared insolvent. Plaintiff opposed this contention by submitting a variety of affidavits and documents showing that all four manufactures were subject to the automatic stay provisions of federal bankruptcy law provided in 11 U. S. C. § 362(a) and the channeling injunction provision of 11 U. S. C. §524(g). The Trial Court agreed with plaintiff's position and rejected North Brother's motions for summary judgment on the issue finding that the manufacturers were not amenable to service of process based on the automatic stay provisions of in 11 U.S.C. § 362(a) and the injunction provision of 11 U.S.C. §524(g). The Trial Court reached the correct conclusion on this issue.

Although North Brother's contends that the four manufacturers, all Chapter 11 debtors, are amenable to service of process, the Bankruptcy Code, 11 U.S.C.A. § 362 (a) clearly prohibits service of process, as follows:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of–
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement

of the case under this title.

The automatic stay may be lifted by the bankruptcy court under certain, limited circumstances pursuant to 11 U.S.C. 362(d) as explained by the U.S. Supreme Court in *Miller v. French*, 530 U.S. 327, 359, 120 S.Ct. 2246 (2000) as follows:

> Indeed, the Bankruptcy Act uses the words "automatic stay" to describe a provision stating that "a petition filed ... operates as a stay" of certain other judicial proceedings-despite the fact that a later portion of that same provision makes clear that under certain circumstances the bankruptcy court may terminate, annul, or modify the stay. 11 U.S.C. § 362(d). . . . Moreover, the change in the legal status quo that the automatic stay would bring about, and the need to demonstrate a special need to lift the stay (according to traditional equitable criteria), mean that the stay would remain in effect in all but highly unusual cases.

*Miller v. French,* 530 U.S. 327, 359.

Accordingly, if North Brothers wanted to lift the stay so that it could sue the manufactures, the proper forum to attempt to do so would be U.S. Bankruptcy Court and not the Tennessee Courts.

Based on the foregoing, the Trial Court correctly determined that all four manufacturers were not amenable to service of process in Tennessee and that initiation of the strict liability suit against North Brothers was appropriate.

Appellant raises several issues regarding the instructions the Trial Court delivered to the jury. These issues are questions of law, and our standard of review is *de novo* with no presumption of correctness. *Solomon v. First Am. Nat'l Bank,* 774 S. W. 2d 935, 940 (Tenn. App.1989). "In reviewing a jury charge, we consider the charge as a whole to determine whether prejudicial error has been committed. The charge will not be invalidated so long as it fairly defines the legal issues involved in the case and does not mislead the jury." *Hunter v. Burke,* 958 S. W. 2d 751, 756 (Tenn. Ct. App.1997). The determination of whether an instruction was proper is crucial because the soundness of every jury verdict rests on the fairness and accuracy of the trial court's instructions. Since the instructions are the sole source of the legal principles needed to guide the jury's deliberations, trial courts must give substantially accurate instructions concerning the law applicable to the matters at issue. *Goodman v. Jones* No. E2006-02678-COA-R3-CV, 2009 WL 103504 at * 5 (Tenn. Ct. App. Jan. 12, 2009)(citing *Ladd v. Honda Motor Co., Ltd.,* 939 S. W. 2d 83, 94 (Tenn. Ct. App.1996). A jury's verdict should not be set aside because of an erroneous instruction to the jury unless it affirmatively appears that the erroneous instruction actually misled the jury. *Olinger v. University Medical Center,* 269 S. W. 3d 560, 563 (Tenn. Ct. App. 2008) citing *Grandstaff v. Hawks,* 36 S. W. 3d 482, 497 (Tenn. Ct. App. 2000)).

Plaintiff contends that the Trial Court failed to instruct the jury that North Brothers

could be at fault for either strict liability based on its selling a defective product or based on their failure to warn of the defect. Plaintiff sought to demonstrate at trial that North Brothers was liable to plaintiff based on the theory that North Brothers was the seller of a defective product and that it had failed to warn of the defect.

Tenn. Code Ann. § 29-28-105 reads, in relevant part, as follows:

(a) A manufacturer or seller of a product shall not be liable for injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

(b) In making this determination, the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market, rather than at the time of injury, is applicable. Consideration is given also to the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products.

Accordingly, a plaintiff must prove that the product was either defective or unreasonably dangerous at the time it left the control of the manufacturer or seller, regardless of the legal theory relied upon. *Shoemake v. Omniquip Intern., Inc.* 152 S. W. 3d 567, 572 (Tenn. Ct. App. 2003)(citing *Fulton v. Pfizer Hosp. Products Group, Inc.,* 872 S. W. 2d 908, 911 (Tenn. App.1993)).

Tenn. Code Ann. § 29-28-102(2) defines defective condition as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-105(b) provides that, in determining whether a product is defective, "the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market ... is applicable." Consideration should also be given "to the customary design, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products." *Id.* As a general rule, an injury in and of itself is not proof of a defect and thereby does not raise any presumption of defectiveness. *Id.* Therefore, it is not enough to show that the product caused the plaintiff's injury or was involved in it. *Whaley v. Rheem Mfg. Co.,* 900 S. W. 2d 296, 300 (Tenn. Ct. App.1995). Rather, "[t]he burden is upon the plaintiff to 'show that there is something wrong with the product.' " *Fulton,* 872 S. W. 2d at 911 (quoting *Tatum v. Cordis Corp.,* 758 F.Supp. 457, 461 (M.D.Tenn.1991)).

Mrs. Nye's defective product theory was that the asbestos-containing products sold by North Brothers, pipe covering and asbestos cloth, were unsafe for their normal or anticipatable handling or consumption because all of the products contained a known carcinogen, asbestos, and in their normal use released respirable asbestos fibers. Plaintiff supported this theory with expert testimony that established that a product that releases respirable asbestos fibers was unsafe for its intended use.

The plaintiff's theory of strict liability based on defective product was specifically pled

12

and supported by the record. Accordingly, the Trial Court had a duty to provide the jury with an instruction on this theory of liability and it did so. The exact instructions delivered by the Court was:

> "A property is defective if it is unsafe for normal or reasonably anticipated handling and use. . . . . A seller includes a retailer, wholesaler, or distributor. A seller is any individual or organization in the business of selling a product, either for resale or for use or consumption."

> "The seller or manufacturer of a product is not responsible for any injury to person or property caused by the product unless the product is determined to be in a defective condition at the time it left the seller's or manufacturer's control. In making this determination, you must apply the state of scientific and technological knowledge available to the seller or manufacturer at the time the product was placed on the market, rather than at the time of injury."

The Trial Judge's charge on this issue was proper. The Trial Court's charge on plaintiff's failure to warn claim, Tenn. Code Ann. § 29-28-102 6) expressly provides that a products liability action may be maintained based on the defendant's failure to warn of a defect in a product:

> "Product liability action" for purposes of this chapter includes all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; **breach of or failure to discharge a duty to warn or instruct**, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever . . . .

Tennessee courts have long held that a manufacturer may be held strictly liable for failing to warn consumers of the dangers of a particular product at the time of sale. *Flax v. Daimler Chrysler Corp*. 272 S.W. 3d 521, 541 (Tenn. 2008), *cert. denied*, 129 S. Ct. 2433, 174 L. Ed. 2d 77( 2009) (citing *Whitehead v. Dycho Co.,* 775 S. W. 2d 593, 596 (Tenn.1989); *Trimble v. Irwin,* 59 Tenn. App. 465, 441 S. W. 2d 818, 821 (1968)). Further, the General Assembly has also acknowledged that a failure to warn claim is a valid basis for a product liability action in Tenn. Code Ann. § 29-28-102(6) cited above. *Flax* at 541 (citing *Dempsey v. International Ass'n of Bridge, Structural and Ornamental Ironworkers* No. 03A01-9709-CV-00436, 1998 WL 254017 at * 8 - 9 (Tenn. App. May 19, 1998).

Plaintiff's theory of recovery regarding failure to warn is that North Brothers knew that the products it sold to DuPont contained asbestos and that asbestos was a carcinogen, but failed to warn the end user of the defect. Thus, for the jury to find for plaintiff on the failure to warn claim,

13

it would have to be instructed on the law on defective product as well as on failure to warn, and it was. The instructions provided on defective product are stated above, and the Trial Court provided the following instructions regarding failure to warn:

> Where proper instructions for use and an adequate warning of hazards are given, the seller or manufacturer may reasonably assume that they will be read and followed. Thus, a product is not in a defective condition if: 1, The manufacturer or seller has given proper instructions for the use of a product and an adequate warning of the dangers associated with the use or misuse of the product; and 2, The product is safe for use if the instructions and warnings are read and followed.

Accordingly, the Trial Court gave instructions on both of plaintiff's two theories of liability, and on this issue the appeal is without merit.

Appellant objects to the Trial Court's instruction that "[a] manufacturer or a seller cannot be held liable for failure to warn if you find that the consumer, DuPont, was already aware of the danger in connection with the use of asbestos-containing products, or if you find that adequate warnings were given by manufactures of sellers to DuPont because the charge, which gives the learned intermediary defense to the jury, was inadequate, incomplete and insufficient to fully instruct the jury and prevent jury confusion." The Trial Court stated during the jury charge conference that this instruction came directly from a "pedicle screw case", *Harden v. Danek Medical, Inc.*, 985 S. W. 2d 449 (Tenn. Ct. App. 1998). In *Harden* the plaintiff brought suit against a manufacturer of a pedicle screw[4], which is a medical device, for injuries caused when the device was implanted in his spine by his physician. The defendant manufacturer filed a motion for summary judgment based on the defense of the "learned intermediary" and the trial court granted the motion. This Court affirmed the judgment of the trial court and explained the learned intermediary doctrine as follows:

> Under this doctrine, manufacturers of certain medical products "may reasonably rely on intermediaries to transmit their warnings and instructions." *Pittman v. Upjohn Co.,* 890 S.W.2d 425, 429 (Tenn.1994). This defense is based upon the pivotal role that physicians play in the distribution of prescription products. *Id.* Physicians can be learned intermediaries only when they receive adequate warnings. *Id.* Thus, manufacturers are not shielded from liability if they provide inadequate warnings to physicians. *Id.* In order to recover for failure to warn under the learned intermediary doctrine, a plaintiff must show:(1) that the defendant failed to warn the physician of a risk associated with the use of the product not otherwise known to the physician; and (2) that the failure to warn the physician was both a cause in fact and proximate cause of the plaintiff's injury. 63A Am. Jur. 2d *Products Liability* § 1200 (1984).

---

[4] Sometimes referred to as a "bone screw".

Generally, "a manufacturer will be absolved of liability for failure to warn for lack of causation where the consumer was already aware of the danger, because the failure to warn cannot be the proximate cause of the user's injury if the user had actual knowledge of the hazards in question." *Id.* at § 1162. Under this doctrine, physicians are the "consumers" who must be warned. Thus, it is generally held that the learned intermediary doctrine may shield a manufacturer from liability when the physician was independently aware of the risks involved. *Id.* at § 1162. *See Odom v. G.D. Searle & Co.,* 979 F.2d 1001 (4th Cir.1992) (applying South Carolina law); *Stanback v. Parke, Davis & Co.,* 657 F.2d 642 (4th Cir.1981)(applying Virginia law); *Spychala v. G.D. Searle & Co.,* 705 F.Supp. 1024 (D.N.J.1988) (applying New Jersey law); *Ashman v. SK & F Lab Co.,* 702 F.Supp. 1401 (N.D.Ill.1988)(applying Illinois law); *Zanzuri v. G.D. Searle & Co.,* 748 F.Supp. 1511 (S.D.Fla.1990)(applying Florida law); *Andre v. Mecta Corp.,* 186 A.D.2d 1, 587 N.Y.S.2d 334, (N.Y.App.Div.1992) *appeal denied,* 85 N.Y.2d 801, 624 N.Y.S.2d 371, 648 N.E.2d 791 . . . .

Thus, the defendant's alleged failure to warn plaintiff is not considered to be the proximate cause of plaintiff's injury under this doctrine. While the "independent knowledge" defense is not universally accepted, *see Seley v. G.D. Searle & Co.,* 67 Ohio St.2d 192, 423 N.E.2d 831 (1981), we follow the majority view among the courts that have decided this issue, which is consistent with Tennessee case law. *See Ball v. Mallinkrodt Chem. Works,* 53 Tenn. App. 218, 381 S.W.2d 563, 568 (1964).

*Harden* at 451 - 452.

The learned intermediary doctrine is well established in Tennessee in relation to product liability claims against manufacturers and distributors of prescription drugs and medical devices. *See Johnson v. Settle,* No. M1999-01237-COA-R3-CV, 2001 WL 585093 (Tenn. Ct. App. June 1, 2001)(medicinal acid); *King v. Danek Medical, Inc.* 37 S.W.3d 429 (Tenn. Ct. App. 2000)(pedicle screw); *Maestas v. Sofamor Danek Group, Inc.,* No. 02A01-9804-CV-00099, 1999 WL 74212 (Tenn. App. Feb. 16, 1999)(pedicle screw); *Spence v. Danek Medical, Inc.,* No. 96C-1004, 1998 WL 665760 (Tenn. Cir. Ct. Jun. 17, 1998)(pedicle screw); *Wood v. Danek Medical, Inc.,* No. 96C-1022, 1998 WL 665774 (Tenn. Cir. Ct. Jun. 17, 1998)(pedicle screw); *Pittman v. Upjohn Co.,* 890 S.W.2d 425 (Tenn.1994)(prescription drug); *Pittman v. Upjohn Co.,* No. 01-A-01-9008CV00302, 1991 WL 165764 (Tenn. Ct. App. Aug. 30, 1991)*, perm. to appeal granted Jan. 21, 1992* (prescription drug); *Dooley v. Everett,* 805 S. W. 2d 380 (Tenn. App.1990)(prescription drug); *Laws v. Johnson*, 799 S. W.2d 249 (Tenn. App. 1990)(prescription drug; doctrine discussed but not applied to pharmacist). However, no Tennessee appellate court has extended the use of the learned intermediary doctrine beyond the medical arena and the doctrine has never been applied in a case involving a supplier of a product to a buyer/employer and an injured employee who is a user of the product.

In *Whitehead v. Dycho Co., Inc*. No. 47, 1987 WL 27044 (Tenn. Ct. App. Dec. 11, 1987) *overruled by Whitehead v. Dycho Co., Inc*. 775 S.W.2d 593 (Tenn. 1989) this Court considered and rejected the application of the learned intermediary or the related "sophisticated user" doctrine in the context of a products liability suit. *Whitehead* 1987 WL 27044 at * 5 - 9.

In *Whitehead* the plaintiff, an employee of Magnavox, brought a products liability/failure to warn suit against several defendants who were manufacturers or distributors of the chemical naphtha, a solvent used by plaintiff in association with her job at Magnavox to remove glue from equipment, her hands and clothing. Plaintiff took some naphtha home with her in a Coke can and placed her work clothes and the solvent in her washing machine. The solvent caused the washing machine to explode, injuring plaintiff severely. *Whitehead* 1987 WL 27044 at * 3. The evidence showed that the supplier of the chemical to Magnavox delivered the product in fifty-five gallon drums that had a flammable liquid warning sticker on it. The supplier also provided Magnavox with a MSDS[5] with the delivery of the first order of the chemical. Magnavox removed the chemical from the drums provided by the supplier and transferred it to small pump-type containers for the individual use of its employees. Magnavox did not place warnings on the small containers nor did it issue any warnings to the employees regarding the flammable nature of the solvent. *Id*.

The *Whitehead* defendants filed motions for summary judgment based on the theory that Magnavox was a "sophisticated, bulk purchaser" of naphtha and that the defendants were entitled to rely on the expertise of the purchaser to warn the ultimate users of the products. *Id.* at * 4. The trial court granted summary judgment in favor of the defendants finding that Magnavox was a skilled, sophisticated, industrial purchaser in bulk from the defendants and that Magnavox was a learned intermediary upon whom the defendants could rely to warn the end user/employees of the dangers presented by naphtha. The Court of Appeals rejected the trial court's reliance on both the learned intermediary doctrine and the "sophisticated user" doctrine as neither theory had been accepted by Appellate Courts of Tennessee. The Court of Appeals also reversed the trial court on the finding that plaintiff's use of the product was unforeseeable, holding that the question of foreseeability was generally a jury question. *Id.* at * 10.

The Tennessee Supreme Court reversed the Court of Appeals and held that the trial court was correct in granting summary judgment but for different reasons than the trial court relied upon. *Whitehead v. Dycho Co., Inc*. 775 S.W.2d 593, 598 (Tenn. 1989). The Supreme Court held that "the independent intervening act of Magnavox in placing naphtha in small, pump-type containers with no label and failing to warn its employees of the dangerous nature of the product was the proximate cause of the accident." *Whitehead,* 775 S. W. 2d 593, 599 - 600 (citing *Ford Motor*

---

[5]Material Safety Data Sheet.

*Company v. Wagoner,* 183 Tenn. 392, 192 S.W. 2d 840 (1946)).[6] While the Supreme Court quoted at length from the Court of Appeals opinion in *Whitehead*, it did not adopt the doctrines discussed in the Court of Appeals opinion, but affirmed the Trial Court on grounds other than those the Trial Court held.

The Sixth Circuit, the federal district courts in Tennessee and several courts in other states have mistakenly cited *Whitehead* as accepting the sophisticated buyer doctrine. *See Jacobs v. E.I. Du Pont De Nemours & Co.,* 67 F.3d 1219, 1244-45 (6th Cir.1995); *Davis v. Komatsu America Indus. Corp.,* 46 F.Supp.2d 745, 754 (W.D.Tenn.,1999); *Laico v. Atlantic Richfield Co.*, No. H021130, 2001 WL 1571634 at * 5 (Cal. App. 6 Dist. Dec. 10, 2001); *Patterson v. E.I. Du Pont De Nemours & Co. Inc.,* No. B113317*,* 1999 WL 117693 at * 5 (Cal. App. 2 Dist. Feb. 25, 1999); *Kennedy v. Mobay Corp.* 579 A. 2d 1191, 1197 (Md. App. Sep 28, 1990); *Humble Sand * Gravel, Inc. v.* Gomez, 146 S. W. 3d 170, 199 (Tex. 2004); *In re Manbodh Asbestos Lit. Series*, No. 324/1997, 2005 WL 3487838 at * 14 (V.I. Super. Nov. 28, 2005; Travelers *Indem. Co. v. Indus. Paper & Packaging Corp.,* No. Civ.A 3:02-CV-491, 2006 WL 2050686 at * 9 (E.D. Tenn. Jul. 19, 2006).

Perhaps this mistake arose when these courts' analysis of the Supreme Court's *Whitehead* holding stopped when they determined that the Supreme Court affirmed the Trial Court's result and did not pick up on the fact that the Supreme Court affirmed the Trial Court on grounds other than what the Trial Court had held, and employed the well known and familiar rule that a trial court may be affirmed on grounds other than the findings made by the trial court, if the trial court's result is correct, but based on the wrong reason.

In the years following the Supreme Court's decision in *Whitehead*, neither that Court nor our Court has adopted the sophisticated buyer doctrine or extended the learned intermediary doctrine beyond the realm of pharmaceutical and medical device products liability cases. Clearly, the learned intermediary doctrine is applicable to cases involving highly skilled users, especially medical doctors, but the same rationale does fit sales of defective products to commercial users.

We hold that the Trial Court erred when it instructed the jury that if DuPont knew of the hazards of asbestos, North Brothers could not be found liable for failure to warn as this charge incorporates either the learned intermediary doctrine or the sophisticated buyer doctrine, and on that basis we remand the case for a new trial.

---

[6] In a later case, the Tennessee Supreme Court held that an employer cannot be found to the legal, or proximate, cause of its employee's injuries although an employer can be found to have been a cause in fact of the injuries. *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 (Tenn. 1997).

17

Next, appellant contends that DuPont, as Mr. Nye's employer, cannot be found to be the proximate, or legal cause of the plaintiff's injuries because the employer is immune from tort liability under the Tennessee Workers Compensation Law, Tenn. Code Ann. § 50-6-108(a).  In support of this contention, appellant relies on *Ridings v. Ralph M. Parsons Co.,* 914 S.W. 2d 79 (Tenn. 1996) and *Snyder v. LTG Lufttechnische GmbH,* 955 S.W.2d 252 (Tenn. 1997).  The Tennessee Supreme Court in *Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 882-883 (Tenn. 2005) reviewed the holdings in *Ridings* and *Snyder,* which were products liability cases.[7]  Both *Ridings* and *Snyder* involved personal injuries in the workplace, and in both cases the manufacturer/defendant sought to use the affirmative defense that the employer of the plaintiff was negligent.  The Supreme Court first discussed the workers compensation scheme set forth by Tenn. Code Ann. § 50-6-101 *et seq.:*

> The right to workers' compensation benefits is a unique concept in the law, derived solely from statutory provisions rather than from the common law. *See* 99 C.J.S. *Workers' Compensation* § 23 (2004). The primary purpose of workers' compensation is to afford benefits for job-related injuries regardless of fault. *Woods v. Harry B. Woods Plumbing Co.,* 967 S. W.2d 768, 772 (Tenn.1998); *see also* Tenn. Code Ann. § 50-6-103 (1999).  Based upon a mutual renunciation of common law rights and defenses, *see Woods,* 967 S. W.2d at 772, the system operates to provide quick and efficient compensation to injured workers in exchange for immunizing employers from tort liability and limiting their damages. *See, e.g., Ridings v. Ralph M. Parsons Co.,* 914 S. W.2d 79, 81 (Tenn.1996) (discussing the underlying policy of the workers' compensation system); *see also* Tenn. Code Ann. § 50-6-108(a) (1999) (providing that the right to receive workers' compensation benefits "shall exclude all other rights and remedies" of the injured employee); *Snyder v. LTG Lufttechnische GmbH,* 955 S.W.2d 252, 256 (Tenn.1997) (noting that "the employer is immune from tort liability under Tennessee Code Annotated section 50-6-108(a).").

*Curtis* at 882.

---

[7] *Curtis* involved a certified question to the Tennessee Supreme Court from the U.S. District Court for the Eastern District of Tennessee in Greeneville.  The question was "In an action instituted against an employer for workers' compensation benefits and in which the employer files an answer or amended answer naming a third party as having caused all or a part of the plaintiff's injuries, does Tennessee Code Annotated section 20-1-119 extend the limitation period and allow the filing of an amended complaint against the third party named by the employer and/or other persons named as tortfeasors(s) by the third party in its answer?" The Supreme Court answered: " [T]hat in an action instituted against an employer for workers' compensation benefits and in which the employer files an answer or amended answer naming a third party as having caused all or a part of the plaintiff's injuries, Tennessee Code Annotated section 20-1-119 is inapplicable and does not extend the limitation period to allow for the filing of an amended complaint against the third party named by the employer and/or other persons named as tortfeasors by the third party in its answer.

The Supreme Court went on to discuss the particular facts and holdings of the two cases Mrs. Nye relies on:

> In *Ridings,* an employee sustained on-the-job injuries when he fell from a ladder. 914 S.W.2d at 80. The employee then filed suit against the manufacturer of the ladder, alleging liability based on theories of negligence, gross negligence and strict liability. Later, the defendant manufacturer sought leave to amend its original answer to allege, as an affirmative defense, that the plaintiff's employer was negligent. The trial court denied this request. In later reviewing the issue on appeal, this Court held that a defendant in a tort action could not assert fault on the part of the plaintiff's employer as an affirmative defense. *Ridings,* 914 S.W.2d at 82. Basing our decision upon the principles of comparative fault as announced in *McIntyre,* we stated that "fault may be attributed only to those persons against whom the plaintiff has a cause of action in tort." *Id.* at 81. Recognizing that employers are immune from tort liability for job-related injuries, we reasoned that "[s]ince the plaintiff's employer cannot be made a party to the plaintiff's tort action for personal injuries sustained in the course and scope of his employment, the rationale of *McIntyre*[8]*,* both as to principle and procedure, will not permit fault to be attributed to the plaintiff's employer." *Id.* at 82. In further analyzing the employer/employee relationship, we stated that "[t]he duty owed a worker by the employer is not measured by the standard of care applicable in actions based on negligence or strict liability." *Id.* at 83. The holding in *Ridings* was later reaffirmed in *Snyder,* in which we also stated that in workers' compensation cases "liability [is] imposed upon the employer without regard to the employer's negligence." *Snyder,* 955 S.W.2d at 255. The basic premise of the holdings in both *Ridings* and *Snyder* was that a defendant in a tort action could not allege, as an affirmative defense, comparative fault on the part of a nonparty who was immune from tort liability.

*Curtis* at 882 - 883.

The *Curtis* Court, however noted that the holdings of *Ridings* and *Snyder* were abrogated in large part by *Carroll v. Whitney,* 29 S. W.3d 14 (Tenn.2000). In *Carroll,* the Supreme Court held that a jury in a medical malpractice case could allocate fault to physicians who, as state employees, were immune from suit. *Carroll* also noted that the workers' compensation system was distinctly different from traditional tort law, thus *Ridings* and *Snyder* were not overruled but remained uniquely applicable with regard to the allocation of fault to employers in workers compensation cases.

---

[8]*McIntyre v. Balentine,* 833 S.W. 2d 52 (Tenn. 1992).

In 2007, the Supreme Court, in *Troup v. Fischer Steel Corp.* 236 S.W.3d 143 (Tenn. 2007), revisited *Ridings*, *Snyder* and *Carroll*. In *Troup,* Belz was a general contractor overseeing the construction of a warehouse. Troup, the plaintiff, was employed by Belz's subcontractor, Jolly. Another subcontractor, Fischer, cut holes in the roof of the warehouse at the instruction of Belz. The plaintiff fell through the holes in the roof and sued Fischer for his injuries. *Troup* at 145. The trial court held that Fisher could not argue the comparative fault of Jolly, plaintiff's employer, or of Belz, plaintiff's statutory employer under Tenn. Code Ann. § 50-6-113(a).[9] However, the trial court allowed Fisher to assert that the acts and omissions of Belz and Jolly were the cause in fact of the plaintiff's injury. *Troup* at 145 - 146.

The Supreme Court discussed at length its prior decisions in *Ridings*, *Snyder* and *Carroll* regarding a defendant's ability to allege the fault of an employer covered by Tennessee's worker compensation law. *Troup* at 146 - 150. The Court reaffirmed its prior holdings that defendants cannot apportion fault to a plaintiff's employer, but the defendants "must be permitted to argue that an employer was a cause in fact of the plaintiff's injuries. *Troup* at 146 (citing *Snyder* at 256). The Court explained:

> This rule is based on the distinction between cause in fact, "the cause and effect relationship between the defendant's tortious conduct and the plaintiff's injury," and proximate or legal cause, "a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and 'our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient.' " *Id.* at 256 n. 6 (quoting *Bain v. Wells,* 936 S.W.2d 618, 625 (Tenn.1997)).

*Troup* at 146.

The Court noted that its previous rulings permit "a defendant to 'point to the employer as the "cause in fact" of the injury and to argue that the [defendant] should be absolved from all liability.'" *Troup* at 149 - 150 (citing *Dotson v. Blake,* 29 S.W.3d 26, 30 (Tenn. 2000).

Here, the Trial Court followed what the Supreme Court allowed in *Troup*, it instructed the jury that it could consider North Brothers' fault in determining liability unless it found that

---

[9]Tenn. Code Ann. § 50-6-113 (a) provides that "[a] principal or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal, intermediate contractor, or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

DuPont was the sole cause of Nye's injuries. The *Troup* Court specifically approved the use of the modifier "sole", stating that under *Snyder* a party could assert that an employer was the cause in fact of the injury and that the defendant could be absolved of all liability if the employer's actions were totally sufficient to cause the plaintiff's injuries without any other causative factors. *Troup* at 150. We conclude this instruction was proper.

However, the fact that the Trial Court wrongly gave the learned intermediary instruction in combination with the sole cause instruction clearly confused the jury. Essentially, the jury was told that if DuPont had knowledge of the defect in the product, North Brothers could not be held liable. This instruction essentially functioned as a directed verdict as to the finding that DuPont was the sole cause of the injury. While the sole cause charge was not error in itself, however when viewed in combination with the learned intermediary or sophisticated buyer doctrine instruction, it caused jury confusion and was thus, improper.

Appellant contends that the verdict form should have delineated both of her causes of actions, defective product and failure to warn. In *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 910 -911 (Tenn. 1999), the Supreme Court discussed the make-up of a jury verdict form when there are multiple claims for relief:

> As the Court of Appeals recognized, the most effective approach in dealing with multiple claims for relief is to require the jury to respond either to a general verdict form accompanied by special interrogatories or to a special verdict form that has been prepared to parallel the instructions to the jury on each claim. Tenn. R. Civ. P. 49 accords trial courts great latitude in using special verdict forms and tailoring special interrogatories to meet the needs of each unique case. *See Petty v. Estate of Nichols,* 569 S.W.2d 840, 847 (Tenn.App.1977). As the intermediate court summarized:

> Special verdict forms should use the same terms as those used in the jury instructions. *See Lundquist v. Nickels,* 238 Ill.App.3d 410, 179 Ill.Dec. 150, 605 N.E.2d 1373, 1389 (1992). They should repeat and highlight the salient issues discussed in the instructions. *See Kass v. Great Coastal Express, Inc.,* 291 N.J.Super. 10, 676 A.2d 1099, 1107 (1996). Inconsistencies with jury instructions and the special verdict form may confuse the jury. *See Ladd v. Honda Motor Co.,* 939 S.W.2d 83, 103 (Tenn.App.1996).

*Concrete Spaces* at 910 -911.

While the jury verdict form used by the Trial Court here, may not have confused the jury to the point that its use was reversible error, the Trial Court is directed to follow the advice in

*Concrete Spaces* and either accompany a general verdict form with special interrogatories that reflect the jury instructions or prepare a special verdict form that parallels the jury instructions as to the multiple causes of action presented by plaintiff and as to the various defenses available to defendant.

Mrs. Nye also claims that the Trial Court should have directed a verdict in her favor on her defective product cause of action. Assuming *arguendo* she is correct, that the Trial Court should have directed a verdict on this issue, it was harmless error as the jury found the product was defective. Under Tenn. R. Civ. P. 36(b), an error does not of itself necessarily require a reversal; a judgment "shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." *See Blackburn v. Murphy,* 737 S.W.2d 529, 533 (Tenn.1987). Moreover, the case is remanded for a new trial which renders a decision on this issue moot, as such motions would be based upon the evidence presented in the new trial.

Based upon the foregoing, we reverse the Judgment of the Trial Court and remand for a new trial in accordance with this Opinion. The cost of the appeal is assessed to defendant.

_____
HERSCHEL PICKENS FRANKS, P.J