Silverstein v Coolsculpting Zeltiq Aesthetics, Inc. (2025 NY Slip Op 01183)

Silverstein v Coolsculpting Zeltiq Aesthetics, Inc.

2025 NY Slip Op 01183

Decided on February 27, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 27, 2025

Before: Moulton, J.P., Gesmer, Mendez, Higgitt, O'Neill Levy, JJ. 

Index No. 152580/18|Appeal No. 3781|Case No. 2024-04217|

[*1]Liana C. Silverstein et al., Plaintiffs-Respondents,
v
Coolsculpting — Zeltiq Aesthetics, Inc., Defendant-Appellant, Jeremy A. Brauer, M.D., et al., Defendants.

Harris Beach Murtha Cullina PLLC, New York (Brian D. Ginsberg of counsel), for appellant.
Hasapidis Law Offices, Scarsdale (Annette G. Hasapidis of counsel), for respondents.

Order, Supreme Court, New York County (Judith N. McMahon, J.), entered July 2, 2024, which, to the extent appealed from as limited by the briefs, denied the motion of defendant Zeltiq Aesthetics, Inc., incorrectly sued herein as CoolScultping - Zeltiq Aesthetics, Inc., for summary judgment dismissing the complaint as against it, unanimously reversed, on the law, without costs, the motion granted, and the complaint dismissed as against Zeltiq. The Clerk is directed to enter judgment accordingly.
Plaintiff Liana C. Silverstein sustained second- and third-degree burns after being treated by defendant Jeremy A. Brauer, M.D. with a CoolSculpting device manufactured by Zeltiq. In opposition to the motion for summary judgment, plaintiffs asserted that Zeltiq failed to warn medical providers of the dangers of applying ice packs to bare skin after treatment by the CoolSculpting device. Plaintiffs relied on evidence that as part of a training course on use of its device, Zeltiq provided medical facilities with a slide concerning clinician recommendations for "Mitigating Late Onset Pain." The slide depicts icing, among other treatments, as a way to manage the severity of possible side effects. Thus, plaintiffs contend, the slide demonstrates a synergistic use between the CoolSculpting device and ice packs, and Zeltiq therefore had a duty to warn against use of the ice packs.
We reject plaintiffs' argument that Zeltiq failed to preserve the issue regarding duty to warn. As to the merits, under New York law, "the manufacturer of a product has a duty to warn of the danger arising from the known and reasonably foreseeable use of its product in combination with a third-party product which, as a matter of design, mechanics or economic necessity, is necessary to enable the manufacturer's product to function as intended" (Matter of New York City Asbestos Litig., 27 NY3d 765, 787 [2016]). Zeltiq demonstrated that the ice packs were not necessary in any way for the CoolScultping device to function as intended. Indeed, the device functioned without incorporating ice packs, and the ice packs were not included as supplies with the CoolSculpting device. The user manual for the CoolSculpting device also does not suggest or recommend the use of ice packs. Rather, the ice packs were considered for use only after the treatment was completed. Nor is there any evidence in the record that Zeltiq derived any economic benefit from posttreatment use of ice packs.
The slide provided to medical facilities fails to demonstrate any synergistic use between the CoolSculpting device and the ice packs. The slide provides "clinician recommendations" for mitigating side effects shown on the slide, and the image depicting icing of the affected area does not show a CoolSculpting device being used simultaneously or in conjunction with the ice pack. Furthermore, the document posits icing as a possibility for mitigating late onset pain, which according to plaintiffs' expert, develops days [*2]or weeks after treatment.
Zeltiq also had no duty to warn plaintiffs of any risks associated with using ice packs after treatment with the CoolSculpting System. Because the CoolSculpting System is a FDA Class II medical device that requires a prescription, Zeltiq's duty to warn runs to physicians, not directly to patients (see Martin v Hacker, 83 NY2d 1, 9 [1993]). Thus, in this case, Zeltiq's duty ran to Silverstein's treating physician, Dr. Brauer. However, there is no duty to warn of risks that are obvious, including risks that are well-known to physicians because of their medical training (see Hartnett v Chanel, Inc., 97 AD3d 416, 420 [1st Dept 2012], lv denied 19 NY3d 814 [2012]). Dr. Brauer testified that through his education and training, he was aware of and knew of the dangers of placing ice on bare skin, and that those dangers were basic medical knowledge (see Banker v Hoehn, 278 AD2d 720, 722 [3d Dept 2000]). Plaintiffs' expert does not dispute that these dangers are basic knowledge in the medical community and, in fact, opines that it is a deviation from the standard of care to place ice packs on bare skin.
In addition, given Dr. Brauer's awareness of the risk, his status as a "responsible intermediary" breaks the chain of proximate cause between any failure to warn by Zeltiq and the harm to Silverstein (see id. at 722, citing Andre v Mecta Corp., 186 AD2d 1, 2 [1st Dept 1992], lv denied 85 NY2d 801 [1995]).
Because plaintiffs' only surviving claim against Zeltiq is dismissed, plaintiff Arthur Backal's derivative claim for loss of consortium against Zeltiq is also dismissed
(see Kaisman v Hernandez, 61 AD3d 565, 566 [1st Dept 2009]). THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 27, 2025