IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 3, 2007 Session

## JERRY T. TROUP, JR. v. FISCHER STEEL CORPORATION

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. CT-001249-01     D'Army Bailey, Judge**

---

**No. W2005-00913-SC-R11-CV - Filed on August 31, 2007**

---

The plaintiff in this case suffered an on-the-job injury and filed a tort claim against the third-party defendant. We granted review to determine whether the third-party defendant is entitled to argue the comparative fault of a principal contractor who is an employer for purposes of the Workers' Compensation Law. We conclude that the third-party defendant may not argue the comparative fault of a principal contractor even if the principal contractor does not have a subrogation interest in the plaintiff's recovery. The third-party defendant may, however, argue that the principal contractor was the sole cause in fact of the plaintiff's injuries. We also conclude that the jury instruction provided by the trial court accurately and adequately explained the jury's ability to consider whether the actions of the principal contractor were the cause in fact of the plaintiff's injuries. Accordingly, we reverse the ruling of the Court of Appeals and remand this case to the Court of Appeals for consideration of the issues pretermitted by its opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed;**
**Case Remanded to the Court of Appeals**

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and CORNELIA A. CLARK and GARY R. WADE, JJ. joined.

David G. Mills, Cordova, Tennessee, for the appellant, Jerry T. Troup, Jr.

Justin Nicholas Joy, Kevin O'Neal Baskette, and Stephen C. Barton, Memphis, Tennessee, for the appellee, Fischer Steel Corporation.

### OPINION

### Factual and Procedural Background

This case arises out of an incident that occurred during the construction of a large warehouse in Memphis, Tennessee. Belz Enterprises ("Belz"), the general contractor overseeing the

construction of the warehouse, contracted with Jolly Roofing ("Jolly") and the defendant, Fischer Steel Corporation ("Fischer"), to serve as subcontractors on the project. On March 26, 1997, Belz instructed Daniel Tomcho ("Tomcho"), a foreman employed by Fischer, to cut holes in the roof. Tomcho testified that he believed the holes were being cut to prepare for the installation of heating and air conditioning units that were to be delivered the next day. Shortly after Belz gave the instruction to cut the holes, Tomcho and a group of other Fischer employees cut approximately four holes, each measuring approximately two feet by four feet. Tomcho testified that after cutting the holes, either he or other Fischer employees laid roofing insulation across the top of each hole. For reasons that are not clear, the heating and air conditioning units were not delivered the next day or within the following week.

The plaintiff, Jerry Troup ("Troup"), was an employee of Jolly who worked as a roofer during the construction of the warehouse. On April 2, 1997, Troup's supervisor instructed him and another Jolly employee to move a pallet containing roofing materials. Although it is unclear who placed it there, the pallet covered one of the holes cut by Tomcho. There were no warning signs in the area of the pallet, and Troup testified that no one had told him about the presence of holes in the roof. When Troup and his co-worker picked up the pallet, Troup noticed the hole, warned his co-worker, and suggested that they put the pallet back down. Immediately thereafter, Troup fell through the hole to the concrete floor approximately thirty to thirty-five feet below. Troup testified that he remains unable to explain how he fell or what caused him to fall. The fall broke Troup's right ankle and right wrist and fractured two vertebrae in his back. As a result of his injuries, Troup was hospitalized for approximately one week, underwent several surgeries, and received extensive medical treatment over the following year.

On February 28, 2001, Troup filed a complaint against Fischer alleging that Fischer negligently created an unreasonably dangerous condition by failing to cover the holes properly and failing to provide adequate warning signs around the holes. In Fischer's answer, it alleges the comparative fault of Troup, Belz, and Jolly.

Prior to the start of the trial, the trial court heard arguments concerning Fischer's ability to argue the comparative fault of Belz and Jolly. Troup argued that pursuant to this Court's decisions in Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79 (Tenn. 1996), Snyder v. LTG Lufttechnische GmbH, 955 S.W.2d 252 (Tenn. 1997), and Carroll v. Whitney, 29 S.W.3d 14 (Tenn. 2000), Fischer was not permitted to argue that Jolly was at fault because Jolly was an employer covered by the Workers' Compensation Law. Troup also argued that Ridings, Snyder, and Carroll bar Fischer from arguing that Belz was at fault because Belz is a statutory employer under Tennessee Code Annotated section 50-6-113(a) (2005).[1] The court ordered that Fischer would not be permitted to assert the comparative fault of either Belz or Jolly but would be allowed to assert that Belz and Jolly's acts or omissions were the cause in fact of Troup's injury. After the close of evidence, the jury found

---

[1] Although Tennessee Code Annotated section 50-6-113 has been amended since the date of the accident, the relevant statutory language remains unchanged. Accordingly, we cite to the current version of the statute.

Fischer to be 70% at fault and Troup to be 30% at fault. The jury awarded Troup $780,000 in damages, which the trial court reduced in proportion to Fischer's percentage of fault.

Fischer appealed on fourteen separate grounds. The Court of Appeals held that the trial court erred by prohibiting Fischer from arguing that Belz was at fault and remanded the case for a new trial. Because the case was remanded for a new trial, the Court of Appeals did not consider Fischer's additional thirteen grounds for appeal. We granted review.

**Analysis**

The Contributory Fault of Belz

This case requires that we once again address the thorny problems created by the interplay between the tort system's doctrine of comparative fault and the workers' compensation system's doctrine of no-fault recovery. Because these issues involve questions of law, we review the rulings of the trial court de novo with no presumption of correctness. See Stewart v. Sewell, 215 S.W.3d 815, 821 (Tenn. 2007). The interaction of comparative fault and the Workers' Compensation Law was first addressed by this Court in Ridings. Like the instant case, Ridings involved an employee who was injured at work and who filed a tort claim against a third party. Although the third-party defendant acknowledged that the adoption of comparative fault does not allow an employer to be held liable in a tort action, the defendant argued that a jury may nevertheless attribute fault to an employer, thus reducing a third-party defendant's liability. Ridings, 914 S.W.2d at 81. We rejected this argument because we interpreted our previous decision, McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992), to require that "fault may be attributed only to those persons against whom the plaintiff has a cause of action in tort." Id. Because the plaintiff's employer was immune from tort actions under the Workers' Compensation Law, no fault could be attributed to his employer. Id. at 82.

We next addressed the interrelationship of comparative fault and workers' compensation in Snyder. In that case, we reaffirmed Ridings but also held that third-party defendants must be permitted to argue that an employer was a cause in fact of the plaintiff's injuries. Snyder, 955 S.W.2d at 256. This rule is based on the distinction between cause in fact, "the cause and effect relationship between the defendant's tortious conduct and the plaintiff's injury," and proximate or legal cause, "a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and 'our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient.'" Id. at 256 n.6 (quoting Bain v. Wells, 936 S.W.2d 618, 625 (Tenn. 1997)). We concluded that although an employer cannot be a proximate cause of a plaintiff's injuries, an employer can be a cause in fact of the plaintiff's injuries. We further concluded that depriving a defendant of the ability to argue that an employer was a cause in fact could preclude third-party defendants from offering a defense and would conceal large amounts of relevant evidence from the jury, thereby making discussion of the underlying facts difficult, if not impossible. Id. at 256. We therefore held that the jury may consider all evidence relevant to the events surrounding a plaintiff's injury but "should be instructed that it may consider the actions of the employer only in assessing

-3-

whether the plaintiff has met his burden of establishing the elements necessary to recover against the defendants." Id. at 257. Defendants, however, may not argue that an employer was the proximate cause of the plaintiff's injury, and juries may not attribute fault to employers. Id.

In Carroll, we further discussed our holdings in Ridings and Snyder and held that juries are permitted to apportion fault to third parties who are immune from suit. 29 S.W.3d at 19. In reaching this conclusion, we refined the central rationale of Ridings by observing that "[a] careful reading of McIntyre . . . suggests that neither the holding of the case nor its underlying rationale limits the attribution of fault only to persons against whom the plaintiff has a cause of action in tort." Id. at 18. Contrary to our reasoning in Ridings, we recognized that the doctrine of comparative fault is designed to create "a tighter fit between liability and fault." Id. at 16. In an effort to maintain the tight fit between liability and fault, we declined to force juries to allocate the entirety of fault between parties who may not be wholly responsible for a plaintiff's injury. Id. at 19-20.

Despite our holding that juries may allocate fault to immune parties and our clarification of the principal reasoning in Ridings, we did not overrule Ridings or Snyder. Instead, we held that those cases are uniquely applicable to the allocation of fault to an employer when the employer's liability is governed by the Workers' Compensation Law. Id. at 19. We reasoned that the continued relevance of Ridings and Snyder is justified by the fact that were it not for those cases, plaintiffs would be subject to a double reduction of their recovery against third parties who contributed to their on-the-job injuries. Id. The first reduction would occur when the jury apportioned fault to the employer. Id. The second would occur when the workers' compensation insurance carrier exercised its right to subrogation against the plaintiff's recovery from the third party.[2] Id. Because this unique situation occurs only in the context of plaintiffs whose recovery is governed by both the Workers' Compensation Law and the laws of the comparative fault system, Ridings' and Snyder's applicability to this limited sphere of cases is justified. Id.; see also Dotson v. Blake, 29 S.W.3d 26, 29-30 (Tenn. 2000) (Holder, J., concurring) (explaining the continued relevance of Ridings and Snyder).

With these considerations in mind, we now turn to Fischer's contention that Ridings, Snyder, and Carroll do not bar Fischer from arguing the comparative fault of Belz. Fischer's argument

---

[2] There are two potential methods for preventing this double reduction. The first is the method prescribed by Ridings and Snyder prohibiting juries from apportioning fault to employers in third-party tort cases. The second would be to allow juries to apportion fault to employers and then limit an employer's recovery to the extent that the employer was allocated fault. Tennessee Code Annotated section 50-6-112(c) (2005) forecloses the second possibility by allowing an employer to pursue its full subrogation interest against an employee's recovery regardless of the employer's degree of fault. See Castleman v. Ross Eng'g, Inc., 958 S.W.2d 720, 723-24 (Tenn. 1997). Accordingly, the only method available to this Court for protecting employees from a double reduction in their tort recoveries is to follow Ridings and Snyder and to prohibit juries from apportioning fault to employers. This method is, of course, an exception to the general rule provided in Carroll and will sometimes result in third parties being attributed liability in excess of their fault. Such difficulties could be avoided if Tennessee Code Annotated section 50-6-112(c) were amended to allow an employer to recover from an employee's third-party tort recovery only insofar as the employer was not allocated fault in the third-party tort case. We invite the General Assembly to consider such an amendment.

requires an analysis of Tennessee Code Annotated section 50-6-113 (2005),[3] which provides that a principal contractor (i.e., a general contractor) may be liable for injuries to employees of a subcontractor. Under this subsection, Belz, the general contractor, is liable for Troup's injuries because Troup was injured while working for Jolly, Belz's subcontractor. In exchange for this exposure to liability under the Workers' Compensation Law, Belz receives immunity from suit in tort. See Tenn. Code Ann. § 50-6-108 (2005). In addition, if Belz paid compensation to Troup, then Belz would be entitled to a subrogation lien against any judgment Troup received against a third party such as Fischer. See Tenn. Code Ann. § 50-6-112(c)(1) (2005). Fischer, however, argues that Belz did not pay benefits to Troup and therefore does not have a subrogation interest in the instant case.[4] If Belz does not have a subrogation interest, then there is no actual threat that Troup's recovery will be reduced a second time. Fischer argues that juries may apportion fault to employers when there is not an actual threat of a double reduction of a particular plaintiff's recovery. We disagree.

In Carroll, we held that Ridings and Snyder continue to be uniquely applicable when a third-party defendant attempts to allocate fault to an employer whose liability is governed by the Workers' Compensation Law. 29 S.W.3d at 19; see also Dotson, 29 S.W.3d at 29-30 (Holder, J., concurring). Although our ruling was designed to prevent the unfairness of allowing an employer's right to subrogation to defeat an employee's tort recovery against a third party, we did not hold that Ridings and Snyder would be applicable only upon a showing that the plaintiff's tort recovery was actually in danger of being defeated in this way. Rather, we explained that the potential for double reduction of a plaintiff's recovery was prevalent enough to justify a special rule for cases when a plaintiff

---

[3] Tennessee Code Annotated section 50-6-113 provides in pertinent part:

(a) A principal or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal, intermediate contractor, or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

(b) Any principal or intermediate contractor, or subcontractor who pays compensation under the foregoing provisions may recover the amount paid, from any person who, independently of this section, would have been liable to pay compensation to the injured employee, or from any intermediate contractor.

(c) Every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employee's rights to recover compensation under this chapter from the principal or intermediate contractor; provided, that the collection of full compensation from one (1) employer shall bar recovery by the employee against any others, nor shall the employee collect from all a total compensation in excess of the amount for which any of the contractors is liable.

[4] Under Tennessee Code Annotated section 50-6-113(c), Troup was required to make a claim against his immediate employer, Jolly, before proceeding with a claim against Belz. To the extent that Troup was fully compensated by Jolly, Troup is barred from recovering from Belz. Tenn. Code Ann. § 50-6-113(c). It appears from the record that Jolly did pay benefits to Troup through its workers' compensation carrier. The record is silent as to whether Belz paid any benefits to Troup.

injured on the job files a tort claim against a third party. Carroll, 29 S.W.3d at 19. In other words, Carroll established a bright-line rule rather than the case-by-case analysis suggested by Fischer. If a jury's ability to apportion fault to an employer were contingent on a showing that a plaintiff's recovery will actually be subject to a double reduction, then in every tort case involving an on-the-job injury trial courts would be forced to determine and plaintiffs would be forced to prove whether an employer has or is likely to have a subrogation interest. Such a determination would be especially difficult in cases in which an employee's contested workers' compensation claim has yet to be settled or conclusively adjudicated. We decline to place this additional burden on plaintiffs and trial courts that already must navigate the murky waters where workers' compensation and comparative fault intersect. Instead, we hold that Ridings and Snyder are uniquely applicable to cases in which the plaintiff's recovery for an injury is governed by both the Workers' Compensation Law and the laws of the comparative fault system, regardless of whether there is an actual threat of a double reduction of plaintiff's recovery. Accordingly, we conclude that the trial court did not err in prohibiting Fischer from arguing the comparative fault of Belz.

The Trial Court's Jury Instruction Regarding Cause in Fact

Because it is closely related to the issues addressed above, we also consider Fischer's argument that the trial court's jury instruction on the cause-in-fact defense was in error. It is the rule in Tennessee that "[i]nstructions should not contain inaccurate or inapplicable statements of legal principles that might tend to confuse the jury." Ingram v. Earthman, 993 S.W.2d 611, 636 (Tenn. Ct. App. 1998). Reversal is only warranted, however, if the trial court's error "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). "An erroneous instruction will not necessarily be considered reversible error if the trial court later explains or corrects the instruction or if the trial court adequately explains the issues in the case in other portions of its charge." Ingram, 993 S.W.2d at 636. Whether a jury has been properly instructed and whether an error in instruction more probably than not affected the jury's verdict are questions of law that are reviewed de novo with no presumption of correctness. See Whaley v. Perkins, 197 S.W.3d 665, 672 (Tenn. 2006).

The trial court instructed the jury as follows:

> As part of its defense, Fischer Steel Corporation may prove by a preponderance of the evidence that acts or failures to act of Jolly Roofing and of Belz w[ere] the sole and proximate cause in fact of the Plaintiff's injury. If they prove this, Fischer Steel would not be at fault. If they fail to prove that Belz and/or Jolly Roofing was the sole proximate cause of the Plaintiff's injuries, then you may consider the actions of Jolly Roofing and Belz only in assessing whether the Plaintiff has met his burden of proving that Fischer Steel was negligent. In that case, you may not assess fault against Jolly Roofing and/or Belz.

(emphasis added).

Fischer argues that the use of the word "sole" as a modifier of "cause in fact" was error. Snyder permits a defendant to "point to the employer as the 'cause-in-fact' of the injury and to argue that the [defendant] should be absolved from all liability." Dotson, 29 S.W.3d at 30 (Holder, J., concurring). "The defense is therefore 'all or nothing' since the [defendant] is not permitted to plead that the employer's fault should be apportioned." Id. at 30 n.2 (Holder, J., concurring). Absolving Fischer of all liability would require a finding that the actions of Belz, the actions of Jolly, or some combination of the actions of both were totally sufficient to cause Troup's injuries without any other causative factors. We therefore conclude that the trial court's use of the word "sole" was an accurate statement of the legal principles involved.

Fischer also argues that use of the word "proximate" as a modifier of "cause in fact" was error. We acknowledge that the phrase "proximate cause in fact" is problematic. As we have previously held, proximate cause and cause in fact are distinct concepts that are not interchangeable. Kilpatrick v. Bryant, 868 S.W.2d 594, 598 (Tenn. 1993). The trial court's use of the phrase initially appears to be a conflation of these two separate concepts. The trial court's reasoning becomes clear, however, when the jury instructions are viewed as a whole.

As part of its instruction to the jury, the trial court defined proximate cause as "a cause which in natural and continuous sequence produces the injury and without which the injury would not have occurred." This definition is virtually identical to the definition of "legal cause" provided by Tennessee Pattern Jury Instructions (Civil) 3.50 (6th ed. 2006). The Tennessee Pattern Jury Instructions do not provide a separate definition for "legal cause" that is designed for the unique situation presented when the jury is permitted to consider cause in fact but is prohibited from considering proximate cause. The trial court, attempting to adapt the pattern jury instructions to this unique situation, chose to modify the phrase "cause in fact" with the word "proximate" to be clear that the jury was permitted to consider whether Belz and Jolly were causes "which in natural and continuous sequence produce[d] the injury and without which the injury would not have occurred."

We are unable to conclude that the trial court erred. The trial court's instruction was sufficient to inform the jury that it could consider whether Belz and Jolly were causes in fact of Troup's injury. Although the trial court's use of language may be confusing to lawyers who know the definition of proximate cause, there is nothing in the instruction that would trouble the understanding of a layman. Because we review jury instructions as the jury would rather than through the practiced eye of a judge or lawyer, we do not find the instruction confusing. Ingram, 993 S.W.2d at 636. Although the trial court used the words "proximate cause," nothing in the instruction told the jury that it was permitted to assign fault to Jolly or Belz "based on considerations of logic, common sense, policy, precedent and 'our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient.'" Snyder, 955 S.W.2d at 256 n.6 (quoting Bain v. Wells, 936 S.W.2d 618, 625 (Tenn. 1997)). We therefore hold that the trial court's instruction did not violate Snyder's holding that juries are not permitted to consider whether an employer was a proximate cause of a work-related injury. In addition, the trial court accurately informed the jury that absent proof that Jolly and Belz were the sole causes of Troup's injury the jury could "consider the actions of Jolly Roofing and Belz only in assessing whether the Plaintiff has met

-7-

his burden of proving that Fischer Steel was negligent." Accordingly, we conclude that the trial court's instruction adequately informed the jury of the legal principles involved.

Fischer also argues that the trial court erred by failing to provide the jury with a definition of cause in fact and by failing to place the cause in fact defense on the verdict form. Fischer requested that the jury be instructed that cause in fact "deals with the 'but for' consequences of an act. The party's conduct is a cause of the event if the event would not have occurred 'but for' that conduct." This definition is not significantly different from the trial court's instruction that proximate cause is "a cause which in natural and continuous sequence produces the injury and without which the injury would not have occurred." For the reasons stated above, we conclude that the jury was properly informed that it could consider whether the actions of Belz and Jolly were the cause in fact of Troup's injury. Therefore, the trial court did not err in failing to provide the requested definition of cause in fact or in failing to place this defense on the verdict form.

## Conclusion

We conclude that Fischer is not entitled to assert the comparative fault of Belz or Jolly but is entitled to argue that Belz and Jolly were the sole cause in fact of Troup's injuries. We further conclude that the trial court's jury instruction properly instructed the jury on Fischer's cause-in-fact defense. Accordingly, we reverse the ruling of the Court of Appeals and remand the case to the Court of Appeals for consideration of the issues pretermitted by its opinion. Costs of this appeal are taxed to the appellant, Fischer Steel Corporation, and its sureties, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE