IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
December 12, 2012 Session

## CELIA MOODY RODGERS and SHERRY MOODY GONZALEZ, Sole Survivors of Joan Lois Moody v. GCA SERVICES GROUP, INC. And WEAKLEY COUNTY TENNESSEE

**Direct Appeal from the Circuit Court for Weakley County**
**No. 2011-CV21      William B. Acree, Judge**

_____

**No. W2012-01173-COA-R3-CV - Filed February 13, 2013**

_____

This appeal involves injuries allegedly sustained by an employee as a result of her employment. The heirs of the deceased employee filed this lawsuit asserting numerous common law tort claims against the deceased employee's employers. The employers filed separate motions to dismiss, arguing that the exclusive remedy for the alleged injuries was pursuant to the workers' compensation law, and that the plaintiffs' common law tort claims were barred. The trial court granted the motions to dismiss. Plaintiffs appeal. We affirm.

**Tenn. R. App.P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Larry E. Parrish, Memphis, Tennessee, for the appellants, Celia Moody Rodgers and Sherry Moody Gonzalez

Bridgid M. Carpenter, Caldwell G. Collins, Nashville, Tennessee, for the appellee, GCA Services Group, Inc.

Jeffery T. Washburn, Dresden, TN, for the appellee, Weakley County, Tennessee

## OPINION

## I.  FACTS & PROCEDURAL HISTORY

Joan Lois Moody ("Mrs. Moody") was a long-time custodian at Westview High School.  She began working for Weakley County in that capacity in 1975.[1]  In 1997, Westview High School relocated to a new building, and Mrs. Moody began rendering her services there.

In 1998, there was a malfunction with the HVAC system at the new Westview High School, which caused vast amounts of water to infiltrate the premises inside Westview.  For reasons not clear from the complaint, the water remained undiscovered and undisturbed for weeks.  When the condition was discovered, there was a "slime"-like layer of mold and mildew growing on vent covers, walls, floors, ceilings, library books, chairs, desks and other fixtures.  The County initially attempted to remediate the problem with fans and janitorial efforts, with little success.  Weakley County then retained a restoration company to conduct emergency dehumidification in the school from August to September 1998.  The restoration company, with the aid of an industrial hygienist, conducted an inspection of Westview in order to determine how to remediate the mold problem and eliminate the source of water intrusion.  The restoration company estimated that the cost to remediate these conditions would be nearly $1.3 million.  It was later determined that the losses incurred at Westview would not be covered by insurance.  Weakley County did not engage anyone to perform the extensive remediation recommended by the restoration company.  It did, however, file a lawsuit against entities that were  involved in the construction of Westview High School, apparently seeking to recover its losses in that manner.

In the years after the 1998 malfunction, Mrs. Moody and her janitorial co-workers were required to work in close proximity to the mold by disinfecting and wiping visible mold spores on Westview's walls and by replacing any discolored ceiling tiles.  At some point after 2000, Weakley County "contracted out" its cleaning and janitorial services to a third-party contractor, and Mrs. Moody became employed by the contractor rather than by Weakley County.  However, her duties basically remained the same.  She routinely cleaned up mold and mildew until she ceased working on or about October 30, 2010.  Mrs. Moody was admitted to a hospital on November 3, 2010, and was informed that she had pneumonia.  Mrs. Moody died at a nursing home on January 19, 2011.

---

[1]  Because this case was resolved on a motion to dismiss, the facts recited in this opinion are taken from the complaint, which must be accepted as true at this stage of the proceedings. *See* **Webb v. Nashville Area Habitat for Humanity, Inc.**, 346 S.W.3d 422, 426 (Tenn. 2011).

Mrs. Moody's two daughters filed this lawsuit against Weakley County "d/b/a Weakley County Board of Education" and against GCA Services Group, Inc., the "cleaning company" contractor with whom she was employed during the latter years of her service at Westview. The Plaintiffs' initial complaint was 97 pages in length. It basically alleged that Mrs. Moody's mold exposure at Westview caused her to suffer from mycotoxin poisoning and that such condition ultimately led to her death. Numerous causes of action were asserted against Weakley County and against GCA. Plaintiffs later filed an amended complaint, and then a second amended complaint, which totaled 122 pages and contained 619 paragraphs of allegations.[2] The eleven causes of action asserted against Weakley County and GCA were described as:

- "Conspiracy, Aiding, Abetting, Etc."
- "Creation/Maintenance Of Public Nuisance: Strict Liability"
- "Creation/Maintenance Of Public Nuisance: Negligence"
- "Breach of Confidential Relationship" between employer and employee
- "Intentional Infliction of Emotional Distress"
- "Battery"
- "Intentional Failure To Remediate Contamination of Property: Premises Liability"
- "Common Law Willful, Wanton, Reckless, Intentional Negligence"
- "Punitive Damages"
- "Wrongful Death"
- "Destruction of Parental Consortium"

The complaint sought over $11 million in compensatory and punitive damages from Weakley County and GCA, and it also sought the appointment of a special master to devise a plan "for complete remediation necessary to eliminate mold from inside Westview and to render Westview free of water/moisture intrusion from outside Westview and leaking water and moisture/condensation inside Westview, to create a court-monitored Westview maintenance protocol to assure no recurrence of mold contamination inside Westview and to prepare a thorough written report detailing the remediation of Westview to be filed as part of the public record in the instant case."

Weakley County filed a motion to dismiss the complaint on several grounds, alleging, among other things, that it was not a proper party to the complaint, that the Plaintiffs lacked standing to bring a public nuisance claim, and that Plaintiffs' claims were barred by the

---

[2] The amended complaints asserted an additional cause of action against Weakley County and GCA and also added other "nursing home defendants." The claims against the nursing home defendants were dismissed for improper venue, and they are not at issue on appeal.

exclusive remedy provision of Tennessee's workers' compensation law. GCA likewise filed a motion to dismiss, asserting that Plaintiffs' common law claims were barred by the exclusive remedy provision of the workers' compensation law. Several responses and replies were filed.

Following a hearing, the trial court entered an order of dismissal granting both defendants' motions to dismiss. The trial court found that all of the Plaintiffs' tort claims were barred by the exclusive remedy provision of the workers' compensation law. The court also found that the nuisance claim was subject to dismissal on the alternative ground that the Plaintiffs lacked standing to pursue such a claim. Although the trial court found that Weakley County was a proper party to the lawsuit, it nevertheless dismissed the Plaintiffs' complaint for the reasons stated above. Plaintiffs timely filed a notice of appeal, and Weakley County later filed a notice of cross-appeal.[3]

## II.   ISSUES PRESENTED

On appeal, the Plaintiffs present a total of twelve issues for review.[4] However, the determinative issues, as we perceive them, can be summarized as follows:

1.    Did the trial court err in dismissing the Plaintiffs' common law tort claims upon finding that the complaint failed to allege facts showing that Weakley County and/or GCA actually intended to injure Mrs. Moody, within the meaning of the intentional tort exception to the exclusive remedy requirement of workers' compensation law; and

2.    If so, did the Plaintiffs have standing to pursue a nuisance claim against Weakley County as successors-in-interest to a cause of action that accrued to Mrs. Moody, due to the fact that the nuisance allegedly caused her death.

---

[3]  Tennessee Rule of Appellate Procedure 13(a) provides that "any question of law may be brought up for review and relief by any party," and "[c]ross-appeals, separate appeals, and separate applications for permission to appeal are not required." Pursuant to Rule 5(c), "If more than one party files a notice of appeal in an action appealed to the Court of Appeals pursuant to Tenn. R. App. P. 3, the first party filing a notice of appeal shall be deemed to be the appellant, unless otherwise directed by the court." Tenn. R. App. P. 5(c) (2012); *see also* Tenn. R. App. P. 3, 1999 Adv. Comm'n Cmt. ("It is the policy of the appellate court clerk's office in cases involving cross appeals to consider the appellant to be the party who first files a notice of appeal[.]")

[4]  Plaintiffs filed an appellant's brief, a reply brief, and also a lengthy "cross-appellees' brief." According to their "cross-appellees' brief," it was filed to respond to the issue raised on appeal by "appellee/cross-appellant" Weakley County. As previously noted, cross-appeals are not required by the Tennessee Rules of Appellate Procedure. Accordingly, the Rules do not contemplate that a party in the Plaintiffs' position will file three separate briefs on appeal.

In its posture as appellee, Weakley County also raises an issue regarding whether the trial court erred in holding that it was a proper party to this lawsuit, rather than the Weakley County Board of Education, a separate entity. For the following reasons, we affirm the decision of the circuit court.

## III. STANDARD OF REVIEW

The resolution of a Rule 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Such a motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Id.* "A defendant who files a motion to dismiss 'admits the truth of all of the relevant and material allegations contained in the complaint, but ... asserts that the allegations fail to establish a cause of action.'" *Id.* (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)). "In considering a motion to dismiss, courts 'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Id.* (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007)). However, "'[t]he facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level.'" *Id.* at 427 (quoting *Abshure v. Methodist Healthcare–Memphis Hosps.*, 325 S.W.3d 98, 104 (Tenn. 2010)). "We review the trial court's legal conclusions regarding the adequacy of the complaint de novo." *Id.* at 426 (citing *Brown*, 328 S.W.3d at 855; *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

## IV. DISCUSSION

Plaintiffs concede that the injuries allegedly suffered by Mrs. Moody occurred as a result of her employment. As such, both defendants, GCA and Weakley County, contend that Tennessee's workers' compensation law provides the exclusive remedy for Mrs. Moody's injuries and that Plaintiffs' common law tort claims are barred. It is undisputed that defendant GCA was the immediate employer of Mrs. Moody. According to the complaint, Mrs. Moody became employed by GCA, rather than Weakley County, after Weakley County "contracted out the cleaning and janitorial services" previously performed by its own employees such as Mrs. Moody. Plaintiffs concede that Weakley County was the "principal contractor," or "statutory employer," of Mrs. Moody, pursuant to the workers' compensation law, Tenn. Code Ann. § 50-6-113, and therefore, Weakley County is also treated as an employer of Mrs. Moody for purposes of liability.[5]

---

[5] "Under the Tennessee Workers' Compensation Act, an employee injured in an accident while in the course and scope of employment is generally limited to recovering workers' compensation benefits from
(continued...)

Tennessee's workers' compensation law "provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury."[6] *Valencia v. Freeland & Lemm Constr. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003) (citing *Liberty Mut. Ins. Co. v. Stevenson*, 212 Tenn. 178, 368 S.W.2d 760 (1963)). This is because of a statutory "exclusivity" provision, which provides, in pertinent part:

> The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident . . . shall exclude all other rights and remedies of the employee, the employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death.

Tenn. Code Ann. § 50-6-108(a).

Like other jurisdictions, however, "Tennessee courts have created an exception to the exclusivity provision for intentional torts committed by an employer against an employee; these torts give rise to a common-law tort action for damages." *Valencia*, 108 S.W.3d at 242 (citing *Mize v. Conagra*, Inc., 734 S.W.2d 334, 336 (Tenn. Ct. App. 1987); *King v. Ross Coal Co.*, 684 S.W.2d 617, 620 (Tenn. Ct. App. 1984); *Estate of Schultz v. Munford, Inc.*, 650 S.W.2d 37, 40 (Tenn. Ct. App. 1982); *Cooper v. Queen*, 586 S.W.2d 830, 833 (Tenn. Ct. App. 1979)). The theoretical basis for this exception is that the employer cannot allege an accident when he has intentionally committed the act. *Cooper*, 586 S.W.2d at 833. By way of example, under the exception, "[i]t is evident that an intentional tort by the employer in person upon the employee will afford a ground for common law action for damages." *Id.* (citing *Boek v. Wong Hing*, 180 Minn. 470, 231 N.W. 233 (1930) (involving an employer who intentionally and maliciously struck an employee with a broom handle). However, the

---

[5](...continued)
the *employer*." *Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 175 (Tenn. 2001) (emphasis added). However, for injuries sustained by employees of subcontractors, our legislature has extended workers' compensation liability to principal contractors under certain circumstances. *Id.* Tennessee Code Annotated section 50-6-113(a) provides:

> A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

[6] Like the immediate employer, a statutory employer is immune from suit in tort as well. *Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 148 (Tenn. 2007); *Campbell v. Dick Broadcasting Co., Inc. of Tennessee*, 883 S.W.2d 604, 606 (Tenn. 1994).

employee cannot sustain a tort action against the employer under the intentional tort exception unless he can prove the employer acted with "actual intent" to injure. ***Valencia***, 108 S.W.3d at 240. In the absence of "actual intent," the plaintiff is limited to his workers' compensation remedies. ***Id.*** In sum, "the provisions of the workers' compensation statute are the exclusive remedy for employees to obtain relief from employers for injuries occurring in the course and scope of employment, unless 'actual intent' to injure has been established." ***Id.***

Cases applying the "actual intent" requirement illustrate that this is a "narrow exception" to the exclusive remedy provision of the workers' compensation act. ***Coltraine v. Fluor Daniel Facility Servs. Co.***, No. 01A01-9309-CV-00419, 1994 WL 279964, at *2 (Tenn. Ct. App. W.S. Jun. 22, 1994). Our Supreme Court was asked to expand the scope of the exception, to include a broader definition of "actual intent," in ***Valencia v. Freeland & Lemm Constr. Co.***, 108 S.W.3d 239, 240 (Tenn. 2003). In that case, a construction worker was working in an open construction trench, which collapsed and buried him alive, causing his death. ***Id.*** at 241. Safety regulations required that companies using construction trenches either slope the sides of the trenches or use "trench-boxes" to ensure that the trenches did not collapse, but this employer did neither, although trench boxes were available and on-site. The employer had been cited twice for violating these regulations *before* the accident at issue, but in spite of the citations, it continued to construct trenches that were neither sloped nor reinforced. The employer also failed to provide a stairway, ladder, ramp or other safe means of egress from the trench, which was another violation of safety standards. The collapse that killed the worker was "likely" a result of these safety violations. The worker's next of kin filed a tort suit against the employer, asserting claims for intentional misrepresentation, negligence, strict liability, wrongful death and assault. The complaint alleged that the employer "acted with the 'actual intent' to injure [the worker]." ***Id.*** Nevertheless, the trial court granted the employer's motion to dismiss the tort claims, finding that although the complaint "indicated that the employer's conduct was 'substantially certain' to cause death, . . . the employer's conduct was not indicative of an 'actual intent' to injure [the worker]." ***Id.*** On appeal to the Supreme Court, the plaintiffs argued that "actual intent" should be broadly interpreted to include an employer's conduct that was "substantially certain" to cause injury or death, but the Court disagreed. The Court explained the reason for the "seemingly strict" rule requiring "actual intent" to injure:

> The Workers' Compensation Law takes away from the employee his common law rights and gives him others, on the guarantee that these substituted rights shall be generously awarded, both for foregoing his common law rights and in consideration of the obligations of his employer to keep his employee from becoming a public charge. The legislature has made the rights of the employee and the employer the exclusive remedy. Those who accept benefits under an

-7-

act of this kind must likewise take the burdens.

*Id.* at 243 (quoting *King*, 684 S.W.2d at 619) (citations omitted). The Court also explained the parameters of the "actual intent" requirement and the Court's reasons for rejecting the broad interpretation suggested by Plaintiffs:

The court in *Mize* explained the reason for this exception as:

Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of *general intentional injury*.... Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully and unlawfully violating a safety statute, this still falls short of the kind of *actual intention* to injure that robs the injury of accidental character. [King,] 684 S.W.2d at 619.

*Mize*, 734 S.W.2d at 336 (alteration in original). Further, proof of actual intent goes beyond that sufficient to prove gross negligence or even criminal negligence. *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 45 (Tenn. Ct. App. 1993)[.]

Plaintiff contends that public policy requires us to hold that when an employer acts in a manner substantially certain to cause death or injury it acts intentionally and such action falls within the intentional tort exception. While the traditional definition of intent used in tort law denotes the tortfeasor's desire to cause the consequences of his or her actions or the belief that the consequences are substantially certain to result from those actions, *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992), that definition is not applicable in workers' compensation cases. *Gonzales*, 857 S.W.2d at 45. Rather, the definition of actual intent is the actual intent to injure the employee. *King*, 684 S.W.2d at 619.

. . . .

We would radically depart from precedent were we to hold that an

employer is exposed to tort liability if its conduct made injury substantially certain. This we cannot do. The statute at issue here, as judicially interpreted, mandates that the Workers' Compensation Law provides the exclusive remedies for all injuries occurring to an employee by way of accident during the course of and in the scope of employment, unless "actual intent" is alleged. This is the majority rule. See 6 *Larson's Workers' Compensation Law* § 103.03 (2001).

*Id.* at 242-243. The ***Valencia*** Court ultimately held that "workers' compensation is an employee's exclusive remedy unless the employee can show that the employer actually intended to injure the employee. Proof of gross or criminal negligence is insufficient in this regard." *Id.* at 243. Applying these principles to the complaint filed on behalf of the deceased construction worker, the Court held that the trial court properly granted the employer's motion to dismiss, despite the fact that the complaint alleged that the employer "acted with the 'actual intent' to injure [the worker]," because, according to the Court, "the amended complaint [did] not allege *facts* showing that the employer actually intended to injure the employee."[7] *Id.* (emphasis added).

In the case before us, the 122-page complaint filed by Plaintiffs contained over 600 paragraphs and set forth numerous common law tort claims.[8] Aside from the sheer volume of allegations, the facts are in non-chronological order, and some allegations are simply unclear.[9] Nevertheless, we will repeat what we deem to be some of the most relevant allegations here. The complaint repeatedly alleged that the "acts/omissions" of Weakley

---

[7] We note that Plaintiffs' brief on appeal listed as one of the issues presented: "Should intentional acts/omissions, by Appellees, that were substantially certain to cause injury to Mrs. Moody[,] be equated with or the same as actual intent of Appellees to injure Mrs. Moody?" The Supreme Court in ***Valencia*** considered that issue and answered in the negative. It is not necessary to discuss the issue further in this opinion. We also note that, because of the abundant Tennessee caselaw addressing the issues raised on appeal, we reject the Plaintiffs' invitation to look to Mississippi law to resolve the issues before us or to determine what Tennessee law "should be," according to Plaintiffs.

[8] In considering the motion to dismiss, the trial court looked to the second amended complaint filed by Plaintiffs, and we have done the same on appeal.

[9] Throughout the complaint, there are lengthy cross-references and "tags" to somewhat "defined" terms in other paragraphs. For example, paragraph 126 states:

126. After February 10,1999, Weakley, by and through Weakley's Board, at no time, before or after 2009, were employees or other agents assigned to Weakley's Board or otherwise rendering to perform Remediation, more particularly described in enumerated paragraphs 121,154, 202, 218, 222, 228, 231-233, 531-532, 544-545 and 547 herein.

County and GCA were "intentional," "deliberate," "willful," and "reckless." As for the specific facts alleged, the complaint stated that Mrs. Moody was routinely assigned to clean up mold and mildew, and that the particular type of mold present in Westview was harmful to "Susceptible Persons," meaning, those who have or develop a compromised immune system. The complaint alleged that Mrs. Moody was a "Susceptible Person." Plaintiffs alleged that Weakley County knew "that unremediated mold inside Westview created a clear and present danger to the health and safety of students, faculty and invitees who are susceptible (hereinafter 'Susceptible Persons') so that exposure of Susceptible Persons to harmful mold and endotoxin-producing bacteria, was hazardous, unreasonably dangerous and/or ultrahazardous (hereinafter 'Clear/Present Danger')." Plaintiffs alleged that the Defendants "caused Deceased to be exposed to ultra-hazardous conditions, thereby, subjecting Deceased to imminent personal injury." More specifically, the complaint alleged that the defendants "caused Deceased to be physically exposed, by inhalation, dermal penetration and/or ingestion, to molds that cause Mold Harm, including Harmful Mold and endotoxin-producing bacteria." Plaintiffs claimed that Weakley County "knew or should have known" that the maintenance program it implemented was not effectively resolving the mold problem.

The Plaintiffs' complaint alleged that the Defendants "fraudulently induced" Mrs. Moody to work in this harmful environment. The complaint alleged that Weakley County disseminated information to suggest that there was no harmful mold inside Westview when it "kn[ew] or should have known same to be false." According to the complaint, when Mrs. Moody asked GCA whether the mold was harmful, GCA "recklessly and/or falsely informed" Mrs. Moody and her co-workers that the mold was not harmful. The complaint alleged that the defendants "employed Deceased's Services, knowing that Deceased was untrained, unequipped and uninformed" about the effects of mold. Plaintiffs alleged that the defendants "assign[ed] Deceased tasks that created a potentially life-threatening risk not obvious to Deceased." They claimed that the defendants "willfully, recklessly and intentionally, placed Deceased and Deceased's co-workers, unaware, in harm's way."

We are required at this stage of the proceedings to "construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Webb*, 346 S.W.3d at 426. Even so, we find that the Plaintiffs' complaint fails to allege facts showing that either Weakley County or GCA actually intended to injure Mrs. Moody. As the Court said in *Valencia*, "the common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of *general intentional injury*." *Valencia*, 108 S.W.3d at 242 (quoting *Mize*, 734 S.W.2d at 336). "Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous

work condition to exist [or] knowingly ordering claimant to perform an extremely dangerous job, . . . this still falls short of the kind of *actual intention* to injure that robs the injury of accidental character." ***Id.***

As Professor Larson explains, it is not enough "merely to allege" actual intent; rather, "there must be alleged facts constituting an actual [] intent to bring about injury." 6 *Larson's Workers' Compensation Law*, § 103 (2002). "Absent allegations of facts which support actual intent, an employee cannot maintain a common law action against his employer for his work-related injuries." ***Gonzales v. Alman Constr. Co.***, 857 S.W.2d 42, 48 (Tenn. Ct. App. 1993) (holding that a common law tort action was properly dismissed for failure to state a claim because the "plaintiff's allegations [were] insufficient as a matter of law to constitute the actual intent to injure which is necessary to avoid the exclusive remedy provisions of the Tennessee Workers' Compensation Act"). Here, Plaintiffs' complaint alleged that Weakley County depended on employees like Mrs. Moody to provide "superficial maintenance services . . . to fix-up and clean inside Westview" as a "reckless substitute for [the] Remediation" recommended by the restoration company, knowing that the recommended plan was estimated to cost $1.3 million. Plaintiffs alleged that this was a "willful, reckless and deliberate" decision that was made in "an effort by Weakley, by and through Weakley's Board, to secure Remediation, without expenditure of Weakley's Funds."[10] At another point in the complaint, Plaintiffs allege that Weakley County utilized the cleaning services of Mrs. Moody and her co-workers during one particular period in order to destroy and "spoliate" evidence of mold that would be relevant in lawsuits filed by students. These allegations, and the inferences reasonably drawn therefrom, do not suggest that the defendants acted with an actual intent to injure Mrs. Moody and her co-workers.

Plaintiffs compare this case to ***Doe v. Walgreens Company***, No. W2009-02235-COA-R3-CV, 2010 WL 4823212 (Tenn. Ct. App. Nov. 24, 2010), which was recently decided by this Court. In ***Doe***, an employee of Walgreens filed numerous claims against her employer after her co-workers used the pharmacy's secure database to access her prescription records and then informed her fiancé and others that she was HIV-positive. ***Id.*** at *2. Walgreens filed a motion to dismiss, arguing that her exclusive remedy was a workers' compensation claim. This Court disagreed. The employee's complaint alleged that her co-workers "deliberately" accessed her records "without medical or legal justification, and without it being job related or a business necessity." ***Id.*** Based upon these allegations, we found that it was "reasonable to infer that [the co-workers' deliberate acts] were made with the actual intent to injure" the plaintiff. ***Id.*** at *9. We find that ***Doe*** is easily distinguishable from the case at bar. Here, there was no allegation that the injurious acts were undertaken "without

_____

[10] Counsel for Plaintiffs suggested during the hearing below that Weakley County wanted to save its money in order to build a new football field.

it being job related or a business necessity," and there was no similar allegation giving rise to a reasonable inference that Mrs. Moody's employer actually intended to injure her. *See Webb*, 346 S.W.3d at 426 (explaining that on a motion to dismiss, the plaintiff is entitled to "the benefit of all *reasonable* inferences") (emphasis added). In fact, the complaint in this case lists more than one "job related" or "business" justification for the defendants' conduct, including the desire to avoid the expenditure of county funds, and the desire to remove evidence of mold that would be relevant in another lawsuit. The factual allegations in the Plaintiffs' complaint, like those in *Valencia*, did not demonstrate an actual intent to injure.

A similar argument was rejected in *Gonzales*, 857 S.W.2d at 43-44, where an employee lost his leg after his employer directed him to go into a hole where untrained workers had just detonated dynamite and to jackhammer a rock that remained, and an undetonated stick of dynamite exploded. The workers used improper equipment and had no way of counting the explosions to assure that the number of sticks that had been wired actually exploded. The plaintiff asked the Court to infer an actual intent to injure from the fact that untrained persons were using explosives after previous citations for the same conduct, making injury substantially certain. The Court declined to make such an inference, stating that the plaintiff's allegations "[did] not logically result in the conclusion that defendant intended to harm plaintiff," and therefore, they were "insufficient as a matter of law to support the common law action." *Id.* at 48. The Court reiterated that "knowingly ordering claimant to perform an extremely dangerous job," or willfully violating safety statutes, "does not provide a sufficient basis to infer actual intent to injure the plaintiff." *Id.* "The law in this State provides that a breach of the employer's duty to provide a safe place to work is not equated with an actual intent to injure." *Id.*

Plaintiffs also argue that this case is unique and distinguishable from previous Tennessee cases addressing the intentional tort exception because, according to Plaintiffs, "In no prior Tennessee case . . . ha[s] an employer known that a directive given by the employer to the employee would cause the employee injury and, upon inquiry from the employee, lied to the employee by informing the employee that the directive would not place the employee in harm's way." Plaintiffs claim that in previous Tennessee cases, the risk to the employee was "obvious." We disagree. We encountered a situation quite analogous to the one before us in *Coltraine v. Fluor Daniel Facility Servs. Co.*, No. 01A01-9309-CV-00419, 1994 WL 279964, *1 (Tenn. Ct. App. Jun. 22, 1994), where the plaintiffs sued their employer for various claims arising out of their exposure to asbestos at a construction project. They alleged that the employer "fraudulently misrepresented that exposure to the asbestos was of no danger to plaintiffs," because the asbestos was being removed by another team of workers in the vicinity, who wore protective clothing. The plaintiffs alleged that the employer "possessed the knowledge" that the asbestos was "toxic and hazardous and extremely dangerous to persons who were exposed to it and not protected. Yet, even with this

knowledge, the defendant . . . intentionally misled the plaintiffs about the hazards of exposure of asbestos[.]" We affirmed the trial court's order granting the employer's Rule 12.02(6) motion to dismiss on the basis that the plaintiffs' exclusive remedy was under the workers' compensation act. We explained:

> Under Tennessee case authority, a plaintiff's allegations that an employer knowingly permitted dangerous working conditions to exist is insufficient to subject an employer to common law liability. *Mize*, 734 S.W.2d at 336; *Gonzales*, 857 S.W.2d at 47. "Proof of gross negligence or even criminal negligence is insufficient to establish the requisite and actual intent to injure that allows an employee to maintain a common law action against his employer." *Cooper*, 586 S.W.2d at 833; *King*, 684 S.W.2d at 619; *Gonzales*, 857 S.W.2d at 46.
>
> Plaintiffs contend that their allegation of intentional fraudulent misrepresentation takes their case out of the exclusive remedy provision of the Tennessee Workers' Compensation Act. Plaintiffs' contention is that "[b]y the very nature of fraud, the tortfeasor intends to bring harm to another." We disagree. Tennessee case law establishes that the existence of defendant's actual intent to injure, not the nature of the tort, is determinative of whether the exception to the exclusive remedy provision applies. . . .
>
> . . . .
>
> Under the workers' compensation cases discussed *supra*, allegations that an employer knowingly permitted a dangerous working condition to exist is insufficient to support a cause of action against an employer. Plaintiffs in the case at bar, however, allege that they asked their supervisors about the dangers of asbestos and that their employer said that the asbestos was of low grade and of no danger to them. Plaintiffs allege that defendant knew that the asbestos was dangerous to plaintiffs. We conclude that the allegations of plaintiffs' complaint are insufficient to bring plaintiffs' case within this exception because the allegations at most support only an inference of a tortious intent. There is no allegation of intent to cause a harmful result. Plaintiffs allege intentional and knowing exposure as opposed to an intentional harmful result, and under the law in Tennessee this is insufficient to state a claim against an employer.

*Id.* at *3-4. We likewise conclude that the Plaintiffs in the instant case cannot avoid the exclusive remedy provision of the workers' compensation act simply by labeling their causes of action as claims for battery, fraudulent concealment, public nuisance, premises liability,

-13-

wrongful death, and the like.[11]  It is not enough for the plaintiff's allegations to support only an inference of a *tortious* intent, as opposed to an actual intent to injure.  *See id.*; *see also Valencia*, 108 S.W.3d at 243 (explaining that "the traditional definition of intent used in tort law . . . is not applicable in workers' compensation cases").[12]  For instance, we have previously explained that the standard for "actual intent" in this context "is far more stringent than that for civil assault and battery."  *Forsythe v. Gibbs*, No. M2001-02055-COA-R3-CV, 2002 WL 1869415, at *4  (Tenn. Ct. App. Aug. 15, 2002) (finding that although evidence of an employer's horseplay satisfied the requirements for civil assault and battery, it came short of demonstrating actual intent to injure, and therefore the employee's sole remedy was workers' compensation).  It is "the existence of defendant's actual intent to injure, not the nature of the tort, [that] is determinative of whether the exception to the exclusive remedy provision applies."  *Coltraine*, 1994 WL 279964, at *4; *see, e.g.*, *Valencia*, 108 S.W.3d at 241 (affirming dismissal of claims for "intentional misrepresentation, negligence, strict liability, wrongful death and assault" because the facts alleged in the complaint did not show that the employer actually intended to injure the employee); *Lancaster v. B.H. Craig Constr. Co., Inc.*, Henry Law No. 3, 1990 WL 70756, at *1 (Tenn. Ct. App. May 30, 1990) *perm. app. denied* (Tenn. Oct. 1, 1990) (affirming dismissal of wrongful death claim against an employer because there was no allegation of actual intent to injure the employee, and noting that "The Workers' Compensation Act provides the exclusive remedy for the entire injury and all of its damages.").  The exclusivity provision of the workers' compensation law provides that the rights and remedies granted to employees under such law "shall exclude *all other rights and remedies* of the employee, the employee's personal representative, dependents or next of kin, *at common law or otherwise, on account of the injury or death*."  Tenn. Code Ann. § 50-6-108(a) (emphasis added).  In the absence of an actual intent to injure within the meaning of the intentional tort exception, the plaintiff is limited to his workers' compensation remedies.  *Valencia*, 108 S.W.3d at 240.  Finding no facts demonstrating an actual intent to injure Mrs. Moody, we affirm the trial court's decision to dismiss the Plaintiffs' complaint for failure to state a claim.  All other issues are pretermitted.

---

[11]  For example, Plaintiffs alleged that the defendants' actions involving Westview created a "public nuisance," whereby the defendants "intentionally" caused Mrs. Moody to suffer personal injuries, property damage, and death.  On appeal, Plaintiffs acknowledge that "the same issue exists" with regard to the nuisance claim "as with the other tort claims."  Namely, "Did Weakley [County] create and maintain the public nuisance with the actual intent to injure Mrs. Moody?"

[12]  Plaintiffs argued on appeal that this case is distinguishable from other cases because, here, the employer operated a school system, and we recognized in *Dean v. Weakley County Bd. of Educ.*, No. W2007-00159-COA-R3-CV, 2008 WL 948882 (Tenn. Ct. App. Apr. 9, 2008), that school systems owe a "special duty" to students.  Plaintiffs argue that this duty should be extended to school employees, and that it should affect the analysis in this case.  *Dean* was a negligence suit.  We find no basis or authority for altering the analysis applicable to certain employers under the judicially created exception to the exclusive remedy requirement of workers' compensation law on the ground alleged by Plaintiffs.

## V. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed. Costs of this appeal are taxed to the appellants, Celia Moody Rodgers and Sherry Moody Gonzalez, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.